[Civ. No. 3374.   Second Appellate District, Division One.—September 1, 1922.]

## JOHN B. ALTHOUSE et al., Respondents, v. PROVIDENT MUTUAL BUILDING-LOAN ASSOCIATION (a Corporation), Appellant.

[1] DEEDS OF TRUST — BUILDING LOAN — PURCHASE PRICE — ADVANCEMENTS—PRIORITIES.—Where vendors of real property agreed with the vendee that their deed of trust for the purchase price should be second to and subject to a building loan for three thousand dollars to be obtained by the vendee, and the trust deed of the vendors and that of the association making the loan were concurrently filed for record, loans made by the association in excess of three thousand dollars without legal obligation to do so under the terms of its deed of trust and with actual notice of the existence of the vendors' trust deed were subsequent to the lien of the vendors, notwithstanding the provision in the association's deed for future advances not exceeding six thousand dollars.

[2] ID.—ABANDONMENT OF BUILDING—EXPENDITURES IN COMPLETION—RELATIVE RIGHTS OF HOLDERS OF TRUST DEEDS.—Where such vendee ceased construction work before final completion of the building and the association which made the loan completed the building, it was not entitled to priority over the vendors for the amount expended in excess of the original loan of three thousand dollars on the theory that such expenditures were future advances involuntarily made for protection, where they were made without the consent of the vendors and the property as it stood at the time of abandonment was sufficient in value to protect the association's loan.

APPEALS from judgments of the Superior Court of Los Angeles County.   John W. Shenk, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Milton K. Young, Lyndol L. Young and William K. Young for Appellant.

W. H. Jamison for Respondents.

CONREY, P. J.—The defendant has filed appeals from six judgments entered in favor of plaintiffs in six actions

---

1.  Validity and construction of mortgage to secure future advances, note, **Ann. Cas.** 1913C, 552.

brought for the recovery of several sums of money alleged to be held in possession by the defendant, subject to equitable liens which entitle plaintiffs to payment thereof. The cases are alike in the statement of facts relied upon. They differ only in that they relate to separate though similar transactions. They were tried together in the superior court. The parties are the same in all of the actions. Pursuant to stipulation, the records are presented in one transcript, and have been argued in one set of briefs. The decision in one case will determine the others. For this reason, we will discuss that case (Superior Court No. B–18520) in which the complaint is printed in the supplement to appellant's brief, as if it were the only action before the court, and then decide all of the appeals in accordance with the conclusions reached in that case.

Except as may be otherwise noted herein, our statement of facts will be taken from the findings of fact contained in the transcript. On the twenty-eighth day of June, 1911, the plaintiffs, being the owners of the north half of lot 2, in block 15, of Ramona Park, in the city of Alhambra, county of Los Angeles, entered into an agreement with the Ramona Park Building Company to sell said property to the company for the sum of $601.40, payable on or before three years from date, with interest as specified; payment thereof to be secured by a deed of trust to be executed at such time as the company might be able to secure a building loan on the property in the sum of $2,500, the proceeds of which were to be used exclusively for the purpose of building a residence on said land; said trust deed to be second to and subject to the building loan. Later it was agreed that the amount of the building loan could be increased to $3,000. The Building Company agreed to construct on the land a residence along such plans as might be acceptable to and approved by the plaintiffs. Plans for such residence were submitted by the Building Company to the plaintiffs and were approved by them. An agreement was made between the defendant and the Building Company for a building loan of $3,000.

On July 11, 1911, plaintiffs conveyed the land to the Building Company. On the same day and for the purpose of securing the payment of a promissory note to the defendant in the sum of $3,000, with interest as specified

therein, the Building Company, as party of the first part, executed a deed of trust to Title Guarantee and Trust Company as party of the second part, and the defendant as party of the third part. In said trust deed (this appears from the copy thereof annexed to the amended answer of the defendant), it was stated that the property was thereby conveyed to the trustee for the purpose of securing the payment of the note "and all costs and expenses incurred under the provisions of this instrument, and also of such additional sums as may hereafter be borrowed and received by the said party of the first part from the party of the third part, not exceeding the sum of six thousand and no/100 dollars, with interest thereon at the rate provided in the original note." It was further provided: "In case said premises are neglected or abandoned, the party of the second part may, at its discretion, enter upon and take possession without notice and employ help to care for the same, using all available means to make productive the premises; and these trusts shall be and continue as security to the party of the second and third parts, or their successors or assigns, for the repayment of the money so borrowed by the party of the first part, and the interest thereon, and of all amounts so paid out and of costs and expenses incurred as aforesaid, whether paid by the party of the second or of the third part, which shall be repaid on demand, and if not so paid, shall bear interest at the rate of one per cent per month thereafter until paid." The trust deed contains the usual power of sale in case of default—the particular terms whereof are not now in question. It was provided that the trustee, "out of the proceeds of sale shall pay, first, the expenses of making such sale; next, shall pay said third party the entire sum due it at the time of such sale, if said proceeds be sufficient, and lastly, any surplus remaining shall be paid to said first party, its successors or assigns."

On July 21, 1911, the Building Company, being indebted to the plaintiffs in the sum of $601.40 on account of the purchase price of said land, made its note therefor with interest payable to the plaintiffs on or before three years after date. At the same time, for the purpose of securing said note, the Building Company, as party of the first part, executed a deed of trust to Los Angeles Abstract and Trust

Company as party of the second part, and the plaintiffs as parties of the third part, said trust deed being upon the same real property described in the first trust deed. At all times from and after July 21, 1911, the defendant had actual notice of the existence of said second trust deed and promissory note in favor of the plaintiffs, and of all the terms and conditions and stipulations contained therein. No part of said indebtedness to the plaintiffs has been paid.

There was no agreement or understanding between the plaintiff and the defendant that said land was to be improved by the construction of a residence building thereon by the Building Company, or that the money for such purpose was to be furnished by the defendant. There was no agreement or understanding between said parties that the trust deed of the plaintiffs and the indebtedness secured thereby was to be subject and subordinate in all respects to the repayment of any and all moneys borrowed from the defendant for the erection and completion of said building, or for moneys advanced or paid out by said association for the completion of said building under any of the provisions of the trust deed of said association other than this, that the plaintiffs' trust deed was made "subject to a trust deed for $3,000 in favor of the Provident Mutual Building-Loan Association, filed for record concurrently herewith." The respective trust deeds were concurrently filed for record on August 19, 1911, at 9 A. M., at the request of the defendant, in the office of the county recorder of Los Angeles County.

The Building Company defaulted in payment of the sums due to the defendant, and the defendant on October 15, 1912, declared the whole of the indebtedness secured by its deed of trust to be immediately due and payable, and directed the trustee to sell the property under the terms and conditions of the trust deed. Due notice having been given, the property was offered at public sale on November 16, 1912, and was sold to the defendant, who was the only bidder at the sale, for the sum of $5,000. The deed was duly executed and delivered by the trustee to the defendant pursuant to said sale. No portion of the sum of $5,000 was paid in money, but the defendant accepted as a credit upon the note of the company to it the said sum of $5,000.

On the sixteenth day of November, 1912, there was due from the Building Company to the defendant on account of the principal and interest of the note secured by defendant's trust deed, the sum of $3,155.10, together with $75 charges and expenses of the sale, said aggregate sum being $1,769.90 less than the amount for which the property was sold by the trustee to the defendant.

In June, 1912, the plaintiffs had caused said premises to be advertised for sale under the trust deed made by the Building Company for their benefit, and had thereafter abandoned those proceedings; but such abandonment was not made with any understanding or agreement between plaintiffs and the defendant. The sale made under the trust deed of the defendant and said abandonment of proceedings by the plaintiffs under their trust deed was not made with any understanding or agreement between the plaintiffs and the defendant in relation thereto nor with any understanding or agreement between said parties that defendant would sell said premises under said deed of trust, and that thereafter the plaintiffs would, if they so elected, have opportunity to sell said premises through the agency of Jonathan S. Dodge, one of their number. Said property was subsequently sold by defendant at its instance and request through the agency of Dodge to H. C. Cassidy, who was an innocent and *bona fide* purchaser, for the sum of $8,000. The said Dodge made said sale as a real estate broker and entirely independent of his associates, the other plaintiffs, and he was not acting for or in behalf of said associates, or of any of them. At the time of said sale, and long prior thereto, plaintiffs demanded of the defendant that their claim against said property be paid from the funds or indebtedness arising by reason of said trustee's sale, and defendant made said sale to Cassidy with full knowledge of such claim.

On February 10, 1912, the Building Company borrowed and received from the defendant the additional sum of $1,000, giving its note therefor of that date. It was optional with the defendant as to whether or not it would make said additional loan of $1,000, and said additional loan was made by the defendant to the Building Company without the actual knowledge or consent of the plaintiffs or either of them. Said loan was not sanctioned or ap-

proved by the plaintiffs or either of them. The amount
due to defendant on said $1,000 note on November 16, 1912,
was the sum of $1,060.30.

On or about April 20, 1912, the Building Company ceased
construction work upon said residence before the final com-
pletion thereof, and said residence remained in that con-
dition until on or about July 1, 1912, at which time de-
fendant entered into an arrangement with the Building
Company to supervise the completion of the building ac-
cording to its original plans therefor. Between July 1 and
November 16, 1912, defendant paid out to various persons
other than the Building Company, on account of labor
and material used and furnished by such persons in and
about said building for the final completion of the same,
the sum of $2,321.18. It was optional with the defendant
as to whether or not it would make such payments. At all
times between said two last-mentioned dates said premises
were not abandoned by the Building Company, and during
said time the same remained in its possession. Said sum of
$2,321.18 was not borrowed or received by the Building
Company from the defendant and said sum was not ex-
pended by the defendant with the consent of the plaintiffs.

Plaintiffs are not guilty of laches and are not estopped
to claim anything against the defendant, or to prosecute
this action.

All of the allegations of the plaintiffs' complaint are true
except as in the findings specifically found to be otherwise,
and all of the allegations of the defendant's amended an-
swer are untrue except as in the findings specifically found
to be otherwise.

This action was commenced on the fourteenth day of No-
vember, 1914. On November 6, 1915, the defendant de-
murred to the complaint on the grounds that the complaint
did not state facts sufficient to constitute a cause of action;
that the plaintiffs have been guilty of such laches in the
commencement of the action as to bar a recovery therein;
that the plaintiffs have been guilty of such laches in the
prosecution of the action as to bar a recovery therein; that
there is a defect of parties plaintiff in that the Ramona
Park Building Company was not made a party plaintiff
thereto; and upon certain grounds of uncertainty, etc,

Appellant claims (a) that the demurrer should have been sustained and that the court erred in not requiring that the Building Company be made a party defendant; (b) that the trust deeds made the property a first security for the payment of the sums expended by appellant for the completion of the building after work ceased thereon and after it had been neglected and abandoned; (c) that the optional loan of $1,000 is a superior and preferred claim to respondent's ''second mortgage,'' and that the same should be allowed in the particular action B–17599, where it becomes an important item; (d) that appellant's claims are superior to those of respondent as a matter of equity; (e) that the defenses of estoppel and laches should be sustained.

The demurrer was properly overruled. No sufficient reason is suggested which would have made the Building Company a necessary party plaintiff. Counsel suggest that by the omission of such party, appellant was deprived of any benefit which it might have received from any offset which the Building Company might have been able to assert against appellant's claim or any equity arising in favor of appellant by reason of the transactions occurring between plaintiff and the Building Company. It is not asserted that any such equity in fact existed. The answer of the defendant reveals no fact indicating the existence of any such equity. It does not appear that the defendant applied to the court to have the Building Company brought in as a party, or alleged any fact which by consequence made it necessary to bring in such party in order that there might be a complete settlement of the controversy between the parties to this action.

Neither is any reason suggested or argument made to support the claim that plaintiffs' right of action was barred by laches through delay in commencing the action. As well might this claim be made in any action brought, as for money had and received, after the lapse of a period of nearly two years after the cause of action accrued. The defendant was not injured by the fact that it remained in undisturbed possession of the fund from and after the time of the sale. It is true that one of the defendant's officers, Mr. Hunter, who had much to do with the transactions in question, died before the trial of this case, but that

unfortunate event occurred nearly two years after the summons herein was served upon the defendant. The record does not show why the action was not brought on for trial until after his death. Laches of the plaintiff, by reason of such delay as there was in commencing the action, was not established. If the action was not prosecuted with reasonable diligence, the appropriate remedy of the defendant would have been by motion to dismiss for want of prosecution. (*Watterson* v. *Hillside Water Co.*, 42 Cal. App. 364 [183 Pac. 592].) It does not appear that any such motion was made.

It may be conceded that as between the parties to the defendant's trust deed, the loan of $1,000 made by defendant to the Building Company, and also the expenditures made by the defendant for completion of the building after July 1, 1912, were secured by that trust deed. But here we are dealing with the rights of the plaintiff, which are defined and limited by another instrument. The agreement between the plaintiff and the Building Company was that the plaintiff's trust deed should be second and subject to the building loan of $3,000. The plaintiff's trust deed did not state that it was made subject to any and all indebtedness which might be secured by the defendant's trust deed. The only proviso with reference to this matter contained in the plaintiff's trust deed was that it was to be "subject to a trust deed for $3,000 in favor of the Provident Mutual Building-Loan Association filed for record concurrently herewith." In making its loans or advances over and above said sum of $3,000, the defendant had actual notice of the terms and conditions of the plaintiff's trust deed.

[1] The facts being as above stated, any loans or advances voluntarily made by the defendant without legal obligation so to do under the terms of its trust deed were subject and subsequent to the lien of the plaintiff for the amount secured by the plaintiff's trust deed. This is the rule established by decision in this state. (*Savings & Loan Society* v. *Burnett*, 106 Cal. 514, 533 [39 Pac. 922]; *Valley Lumber Co.* v. *Wright*, 2 Cal. App. 288, 291 [84 Pac. 58]; *The Seattle*, 170 Fed. 284, 288 [95 C. C. A. 480].)

[2] It cannot successfully be disputed that the item of $1,000 was a voluntary addition to the original loan made by the defendant. Appellant claims, however, that by rea-

son of the fact that the owner ceased construction work about April 20, 1912, the premises were neglected and abandoned within the meaning of the provisions of appellant's trust deed, which gave to appellant in case of such abandonment the right at its discretion to enter upon and take possession of the premises and to use all available means to make the same productive; and which provided further that all expenses incurred for that purpose should be secured by appellant's trust deed. Appellant claims that the expenditures thus made by it for the completion of the building were not optional loans in any sense; that while the mortgagee might make such expenditures or not, as it elected, that the mortgagor was obligated to accept such expenditures as a loan for the protection of the mortgagee "and the mortgagee makes the loan not altogether as a voluntary act, but as a necessity to protect the security." But we think that under the stated facts the making of these expenditures was the voluntary act of the defendant. Its refusal to advance money for the completion of the building would not have been the violation of any obligation imposed upon it by its trust deed. We fail to see how the advancements became obligatory in any sense, except that for its own interest appellant may have felt obliged to complete the building, so that the property might be sold to better advantage. But so far as the evidence shows, the property as it stood at the time when the work of construction was abandoned by the Building Company was sufficient in value to protect the $3,000 loan theretofore made by appellant.

Neither do we think that respondent is estopped to claim priority for its lien, as against such advancements made by appellant with actual notice of the trust deed existing in favor of respondents. The court found that these moneys paid out by appellant for completion of the building were not so paid out or expended with the consent of respondents. There is evidence sufficient to support this finding. From the testimony of one of the respondents, Mr. Dodge, it appears that in his conversations with Mr. Hunter, who represented respondent, it was well understood that appellant claimed that it had the right to complete the building and that its lien for the moneys expended would have preference over that of respondents; and that, on the other

hand, Mr. Dodge claimed that respondents would be entitled to have their lien satisfied next after the payment to appellant of its $3,000 loan under its trust deed. With this open question between them, appellant made the advancements necessary to complete the building. These are not those circumstances of silence concerning an adverse claim which, by misleading the other party, or by leading him to do what otherwise he would not have done, should estop the claimant from asserting his right.

The judgments are affirmed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 30, 1922.

All the Justices concurred.