[Civ. No. 19413. First Dist., Div. One. Jan. 30, 1962.]

IRENE A. RAGUSANO, Plaintiff and Appellant, v. CIVIC CENTER HOSPITAL FOUNDATION, Defendant and Appellant; DR. JOHN T. AVERY et al., Defendants and Respondents.

588

Bruce Walkup, Nunes & DeBorba and Gerald C. Sterns for Plaintiff and Appellant.

Lamb & Hoge for Defendant and Appellant.

Hadsell, Murman & Bishop for Defendants and Respondents.

BRAY, P. J.—Combined appeals. Defendant Civic Center Hospital Foundation, a corporation, appeals from an order granting plaintiff a new trial against it. Plaintiff, as a precautionary measure under rule 3(a), Rules on Appeal, cross-appeals from the judgment of nonsuit granted defendant hospital. Plaintiff appeals from the judgment after jury verdict against her in favor of defendant doctors.

### QUESTIONS PRESENTED

### DEFENDANT HOSPITAL'S APPEAL FROM ORDER GRANTING NEW TRIAL

1. Did the pretrial conference order eliminate any cause of action against defendant hospital?

2. Was res ipsa loquitur applicable as against defendant hospital? If it was, then the nonsuit in favor of defendant hospital was erroneously granted and the order granting plaintiff a new trial against defendant hospital was properly granted.[1]

---

[1]The improper granting of a nonsuit is an error of law for which a new trial may properly be granted. (*Bice* v. *Stevens* (1954) 129 Cal. App.2d 342, 356 [277 P.2d 106].)

## Plaintiff's Appeal From Judgment for Defendant Doctors

1. Does the failure of the court to reinstruct the jury on res ipsa loquitur require a reversal?

2. Is plaintiff entitled to a new trial against defendant doctors because of error in granting nonsuit in favor of defendant hospital?

### Record

The first count of plaintiff's complaint charged that while plaintiff was unconscious, defendant hospital and defendant doctors were negligent in the use of instrumentalities, appliances, equipment, drugs, medicines and anesthesia causing paralysis of plaintiff's left leg. The second count charged the negligent administering of a spinal injection causing her a paralyzed left leg and injuries to her spinal system and other injuries.

At the trial, at the end of plaintiff's case, the court granted a nonsuit in favor of defendant hospital. The case against defendant doctors then proceeded and a jury verdict in their favor was rendered. On motion for new trial, the court granted a new trial against the hospital, "because of errors of law and on the ground that the judgment of non-suit granted as to said Defendants is against law as to the Plaintiff herein," and denied the motion as to defendant doctors. It is conceded that the new trial was granted because the court felt that it had erred in holding, when it granted the nonsuit, that res ipsa loquitur did not apply in the case against the defendant hospital.

### Defendant Hospital's Appeal

1. *The pretrial conference order.*

After stating that it was admitted that defendant Civic Center Hospital Foundation operated the Civic Center Hospital and that the defendant doctors are duly licensed osteopathic physicians and surgeons, the order states that plaintiff alleges that she was admitted to the hospital for medical care and treatment; that she was treated in such manner *by the defendant doctors*; that she suffered permanent physical injuries, for which she seeks certain damages; that in a second cause of action she alleges specifically the negligence in the administration of a spinal injection by defendants; that all defendants admit that plaintiff was admitted to

the defendant hospital as a patient and that while in said hospital she was anesthetized; that all defendants deny any negligence.

The pretrial order is hardly a model of clarity. However, the order did refer to plaintiff's admission to the hospital for medical care and treatment. The parties themselves did not treat the order as eliminating any claim against defendant hospital, for at the trial, when plaintiff asked that the second count be dismissed, the court stated, "Such will be the order. It is a general malpractice against the hospital, and Doctors Avery and Morgan." No objection was made to this framing of the issues. Defendant hospital made two motions for nonsuit, the first unsuccessful, the second, successful. In neither motion nor in opposition to the motion for new trial was any contention made that the pretrial order eliminated any claim against defendant hospital. The case was tried upon the theory that defendant hospital was still in the case. Defendant hospital cites a number of cases such as *Fitzsimmons* v. *Jones* (1960) 179 Cal.App.2d 5 [3 Cal.Rptr. 373], to the effect that the pretrial conference order, if inconsistent with the pleadings, controls, unless modified before trial. Obviously they do not apply to a situation in which the parties interpret the order as they did here, and in which the issues were tried without objection. (See *City of Los Angeles* v. *County of Mono* (1959) 51 Cal.2d 843, 847 [337 P.2d 465], where the court relied upon the interpretation of the pretrial order by the parties.)

That the pretrial order is not omnipotent is shown by the fact that it has been held that the pretrial order does not do away with the power of the trial court to permit amendments to conform to the proof. (*Atkins* v. *Atkins* (1960) 177 Cal. App.2d 207, 211 [2 Cal.Rptr. 104].) Our situation is somewhat similar to that in *Rocky Mountain Export Co.* v. *Colquitt* (1960) 179 Cal.App.2d 204, 206-207 [3 Cal.Rptr. 512], where the court stated: "The purpose of pretrial proceedings is to expedite and not to obstruct the administration of justice. The record indicates that the plaintiff was advised of defendant's contention during the discussions between the parties at the time of the pretrial conference. There is no showing nor is there any contention that the plaintiff was surprised, misled or prevented from making an adequate presentation of its claim by the granting of the motion to amend. No request was made for a continuance. The plaintiff

proceeded upon the theory that it had not sold the drilling rig pursuant to the rights conferred upon it by the chattel mortgage but by an independent agreement and therefore was not bound by the law governing such a sale. The finding of the court was to the contrary and is fully substantiated by the evidence.''

Again, as this contention is raised for the first time on appeal, we must disregard it. (*Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780].)

2. *Res Ipsa Loquitur as Against Defendant Hospital.*

To determine whether the doctrine is applicable it is necessary to set forth the evidence. Defendant Dr. Avery had been plaintiff's family doctor since 1951. His associate, a Dr. Hampton, had delivered plaintiff's first child. When expecting her second child, she went to Dr. Avery again, and was first seen by his employee, defendant Dr. Morgan. During her visits to them they found her in good health. From pelvic measurements and X-rays, they advised her that the baby was large, but that there should be no problem as to a normal delivery. Plaintiff is a small woman, 4 feet 11½ inches tall.

When plaintiff unexpectedly went into labor Dr. Avery was away; so Dr. Morgan admitted her to the hospital. She entered the labor room and was there about four hours. Dr. Avery arrived just before she went from the labor room to the delivery room. Dr. Avery was brought up-to-date by Dr. Morgan. Dr. Avery found plaintiff to be fully dilated. No difficulty was expected. In the delivery room, in addition to the two defendant doctors were internes employed by the hospital, Drs. McGrady and Bowe. Present also were two nurses employed by the hospital, one of whom was an obstetrical nurse. Dr. Avery was in charge and Dr. Morgan was assisting him. Dr. Bowe was the anesthetist.

When plaintiff arrived in the delivery room she was given a spinal anesthetic by Dr. Morgan. She was then placed on the delivery table, her legs in stirrups. Stirrups are adjustable up and down and sideways. There is a padded portion that is placed on the thigh, thus holding the knee in place. Once put up the legs are strapped in place. The positioning and strapping was done by one of the nurses. Plaintiff was in the stirrups for about 45 minutes. It then became evident that birth was not going to occur immediately. She was then taken out of the stirrups. When the spinal anesthetic wore off she

was given ether by Dr. Bowe. A second spinal was administered. She was then placed back in the stirrups. The adjustment on the stirrups was not changed in the interval. Shortly thereafter the baby was born and then the doctors did some work on plaintiff. Plaintiff was in the stirrups the second time for about 45 minutes. The total time of the delivery was 3 hours, 36 minutes. After the delivery plaintiff remained in bed until the next day. When she attempted to get out of bed she had difficulty with her left leg, her ankle ''dropped'' and her foot and leg to the knee felt like they were asleep. Dr. Avery thought that it was a temporary condition. After treating the leg for a time, he sent plaintiff to Dr. Norcross, a neurologist, who prescribed a brace that plaintiff is still wearing. This was done without expense to plaintiff.

Plaintiff's medical experts were Dr. Bailey, a specialist in neurosurgery, and Dr. Marsh, a general practitioner. Dr. Bailey testified that plaintiff's injury was due to damage to the common peroneal nerve. In his opinion this damage was due to the fact that her left leg had been improperly positioned or hung up in the stirrups, possibly due to the fact that she is a short woman. Elevating the knees in the stirrups is standard procedure.

Dr. Marsh agreed that there was damage to the peroneal nerve, ''either due to pressure or traction, I feel more likely to pressure from the stirrups that were used at the time of delivery, either by improper adjustment of the stirrups or the straps were placed over her legs at the time for too long a period of time, too long or too tight.'' The difference of just an inch or even half an inch one way or the other with the patient under anesthesia and unable to feel pain or any other sensation, could cause the nerve to be pinched and if not corrected, permanent damage would result.

Both doctors testified that the injury is permanent and will require corrective surgery, but that even this could not guarantee plaintiff full use of her leg in the future.

After a nonsuit was granted defendant hospital, Dr. Norcross, the neurologist, testified that the injury was to the sciatic nerve and was due to a lesion in the area of the lumbosacral plexus, and that the condition was not due to any injury in the area of the left knee. Dr. McGrady and Dr. Bowe testified to the procedure during the delivery about as described above. Dr. McGrady felt Dr. Avery to be a ''very

competent man.'' Dr. Bowe testified that standard procedures were followed. Dr. Morgan testified that he administered the spinal anesthesia (something he had done 100 times); that the delivery handled by Dr. Avery was a standard low forceps delivery done in a normal manner which was incapable of causing paralysis. He noted that the labor was difficult and when it became evident that delivery was not going to occur during the period of the first spinal anesthesia, plaintiff was taken down from the stirrups and given ether to control the pain. The baby had a large head with impressive shoulders when born. In his opinion ''standard care was used'' by the doctors.

Dr. Avery testified that he followed standard practice. Actually there was no testimony that standard practice was not followed by either the doctors or the hospital.

■■ In *Cho* v. *Kempler* (1960) 177 Cal.App.2d 342 [2 Cal. Rptr. 167, 76 A.L.R.2d 774], we set forth the three requirements for the application of the doctrine. Quoting from *Wolfsmith* v. *Marsh* (1959) 51 Cal.2d 832, 835-836 [337 P.2d 70], we said: '' '(a) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (b) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (c) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' '' (P. 347.) No contention is made in this case that the accident was due to any action or contribution on plaintiff's part so we need consider (c) no further. [3] As to (a) we held in *Salgo* v. *Leland Stanford etc. Board of Trustees* (1957) 154 Cal.App.2d 560, 570 [317 P.2d 170], that the doctrine is applicable if ''it is a matter of common knowledge among laymen *or* medical men or both that the injury would not have occurred without negligence.''

■■ In our case it is a matter of common knowledge among laymen that the routine delivery of a child (as this admittedly was) should not result in the mother's having a paralyzed leg (see *Sherman* v. *Hartman* (1955) 137 Cal.App.2d 589 [290 P.2d 894]), and Dr. Marsh testified that if standard care were exercised he would not ordinarily expect to find a patient, following the delivery of her child, ending up with a foot drop or paralysis of the leg. Dr. Bailey testified that in his opinion plaintiff's left leg ''was hung up a little higher than it should be for a woman of her size. . . .'' This testi-

mony was sufficient evidence to meet the requirement of (a) above.

The most serious question relates to requirement (b). Was the injury "caused by an agency or instrumentality within the exclusive control of the defendant" hospital? This requires an examination of the evidence as to just what the duties and responsibilities of the hospital employees present at the delivery were, and what they did. In this respect we, of course, are required to disregard conflicting evidence, give plaintiff's evidence all the value to which it is legally entitled, and indulge in every legitimate inference which may be drawn from that evidence. (*Seneris* v. *Haas* (1955) 45 Cal.2d 811, 821 [291 P.2d 915, 53 A.L.R.2d 124].) "[E]xclusive control" mentioned in requirement (b) does not have a narrow meaning. As said in *Ybarra v. Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], "An examination of the recent cases, particularly in this state, discloses that the test of actual exclusive control of an instrumentality has not been strictly followed, but exceptions have been recognized where the purpose of the doctrine of res ipsa loquitur would otherwise be defeated." (P. 493.) "We merely hold that where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct." (P. 494.) In *Ybarra, supra,* the court held that "the test has become one of right of control rather than actual control." (P. 493.)

*Did the hospital employees have any control or right of control?*

The record shows that when plaintiff was brought into the delivery room, there were present besides Dr. Avery and Dr. Morgan, Dr. McGrady and nurses, both of the latter being employees of the hospital. Dr. Bowe came in later. Dr. Avery testified that one of the functions that the nurses of the hospital perform is to adjust the stirrups to the patient. "They are accustomed to doing that many times a day for all different sizes and shapes of people and the doctor can observe it while it is being done, and also the doctor who anticipates delivering the baby drapes the leg and notes the manner in which it is put on the stirrup and he has a perfect view of

the position at that time." The nurse adjusted the straps. When asked if measurements of the patient were taken in order to place the patient in the stirrups, he said that they were not. "[A]n experienced person who is used to doing that day after day can determine . . . how to make the necessary adjustments on the stirrups." Obviously he was referring to the nurse. Dr. Avery also testified that the obstetrical nurse was there and when asked if the attending physician is in charge of all the people in the delivery room during the actual delivery, he said, "That is correct, to a certain degree. However, the obstetrical nurse has a great deal of authority in that respect. An attending man who is not qualified to perform certain procedures, the obstetrical nurse has the power to tell him that he can't proceed and he will have to call in someone else." He later said that if it was necessary to change the position of the legs in the stirrups that has to be done by the obstetrical nurse.

Dr. Avery testified that the equipment, the table, the stirrups, and all the tools and instruments used were under the control of either himself or some attendant of the hospital. Plaintiff was taken down from the stirrups once. The record does not show who replaced her in the stirrups, but it is a reasonable inference from the evidence that it was one of the nurses.

While Dr. Avery testified that he was in control of the procedure, it is a fair inference from the evidence as a whole that the defendant hospital employees had some control and right of control. At least, the situation called for an explanation by the defendant hospital of the role of its employees and its lack of negligence.

"[A] patient injured while unconscious on an operating table in a hospital could hold all or any of the persons who had any connection with the operation even though he could not select the particular acts by the particular person which led to his disability." (*Summers* v. *Tice* (1948) 33 Cal.2d 80, 86 [199 P.2d 1, 5 A.L.R.2d 91].)

Applicable here is the statement from *Ybarra* v. *Spangard, supra,* 25 Cal.2d at page 494: "[W]here a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their con-

duct." (See *Oldis* v. *La Societe Francaise* (1955) 130 Cal. App.2d 461 [279 P.2d 184].)

In *Seneris* v. *Haas, supra,* 45 Cal.2d at page 825, the court said, quoting from *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 445 [247 P.2d 344] : " 'Another factor which some of the cases have considered in applying the doctrine is that the defendant may have superior knowledge of what occurred and that the chief evidence of the cause of the accident may be accessible to the defendant but inaccessible to the plaintiff. . . .'

"This factor is peculiarly applicable, as well as necessary, in the type of situation we have here—where a patient suffers injury while unconscious and in the care and custody of the defendant, or defendants." In *Seneris* the plaintiff became permanently paralyzed following childbirth after having had a spinal anesthetic administered.

The courts have variously expressed the situation in which those concerned with a surgical operation are faced with the doctrine of res ipsa loquitur. In *Dierman* v. *Providence Hospital* (1947) 31 Cal.2d 290 [188 P.2d 12], it was held to apply to all those *attending* the patient. In *Seneris* v. *Haas, supra,* 45 Cal.2d 811, it was applied to every defendant in whose custody the patient was placed for treatment; in *Leonard* v. *Watsonville Community Hosp.* (1956) 47 Cal.2d 509 [305 P.2d 36], and *Oldis* v. *La Societe Francaise, supra,* 130 Cal.App.2d 461, to all those who had any control over either the body or any instrumentality which might have caused the injury.

The actual placing of plaintiff in the stirrups and their adjustment was done by the hospital nurses. If plaintiff's injury were one which would not ordinarily occur without negligence (a matter to be determined by the jury on proper instructions) then an explanation by the nurses was called for.

It should be pointed out that in considering the question of control by defendant hospital we are setting forth inferences which a jury *could* draw from the evidence, not that such inferences *must* be drawn. As said in *Cho* v. *Kempler, supra,* 177 Cal.App.2d at page 348, quoting from *Wolfsmith* v. *Marsh, supra,* 51 Cal.2d 832, " '[t]he conclusion that negligence is the most likely explanation of an accident or injury is not for the trial court to draw or refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence, though the court itself would not draw that inference.' "

Defendant hospital contends that the doctrine of res ipsa loquitur was not applicable because "The evidence showed that the specific cause of the paralyzed foot was that the defendant doctors left the plaintiff too long in too tight stirrups." While this was given as one of the causes of plaintiff's condition, it was the jury's duty to weigh that testimony and that relating to the other claimed causes of the injury with the inference of negligence arising from the doctrine.

We conclude that the trial court was correct in its determination on motion for new trial that it had erred in not applying the doctrine of res ipsa loquitur to plaintiff's case against defendant hospital, and that therefore the court properly granted a new trial. In view of this determination, plaintiff's appeal from the judgment of nonsuit granted defendant hospital will be dismissed.

### Plaintiff's Appeal

1. *Reinstructing the jury.*

The case was submitted to the jury at 10:08 a. m. At 3:52 p. m. the jury returned for further instructions. The court stated: "Now, ladies and gentlemen of the jury, in response to your inquiry, *counsel have conferred with the Court and we have agreed that probably the following will help you in meeting the problem that apparently perplexes you at this time.* [Emphasis added.]

"You have inquired of the Court whether or not a finding that the injury to plaintiff was proximately caused by the stirrups upon the knees of the plaintiff while she was giving birth to the child on September 8, 1956, necessarily meant that there should be a finding that a defendant was negligent in this case.

"Such a situation may or may not mean that a defendant was negligent, depending upon your finding as to whether or not a defendant or his agents negligently kept plaintiff in the stirrups, thus proximately causing the injury; or whether or not a defendant or his agents negligently adjusted the stirrups on plaintiff, thus proximately causing the injury; or whether or not a defendant or his agents negligently strapped plaintiff's legs into the stirrups, thus proximately causing the injury.

"In other words, the test is whether or not a defendant was himself or through his agents guilty of malpractice."

The court then defined malpractice and instructed upon a

physician's duty of care at some length. The court then asked the foreman: "Does that meet the problem you have been discussing?" The foreman replied, "Yes." The court: "Then if it does, I will send you back for further deliberations." The jury returned at 4:13 p. m. with a 10 to 2 verdict in favor of defendant doctors.

Plaintiff contends that it was error for the court not to then reinstruct on res ipsa loquitur. The court in its prior instructions had fully instructed upon the doctrine. Plaintiff at no time requested the court to reinstruct upon that subject, nor in any way indicated to the court that the reinstructions as given did not comply with the agreement of counsel in chambers referred to by the court. If there were such agreement this is a much stronger situation than was that in *Olson* v. *Standard Marine Ins. Co.* (1952) 109 Cal.App.2d 130 [240 P.2d 379], where the court said (pp. 140-141): "After the jury had been considering the case for some time it returned and indicated its desire to have some instructions reread on domicile, fraud and investigation. The court read some but not all of such instructions, following which the jury answered affirmatively the following questions by the court: 'Now does that cover your question of domicile?' 'Does that answer your questions?' Appellant made no request that other instructions be read. A similar situation arose in the case of *People* v. *Finali* found in 31 Cal.App. 479 [160 P. 850]. At page 489 the court said: 'Defendant was not entitled as matter of right to have instructions read which the jury had not called for or to have all the instructions on a given subject read when such as were read were satisfactory to the jury.' " The reviewing court held that the trial court committed no error.

On motion for new trial in our case plaintiff's counsel contended that there had been no agreement in chambers. Both the court and defendants' counsel disagreed with plaintiff's counsel's version of precisely what took place there, except that the latter conceded that "no discussion was had in chambers as to whether it [res ipsa loquitur] should be given or not . . ." Clearly, even if there were no agreement, it was the duty of plaintiff, under the circumstances here, to request either in chambers or in court that the particular instruction be given before error in not giving it can be claimed.

Plaintiff criticizes the instruction given by the court on duty of care. However, practically the same instruction was approved in *Norden* v. *Hartman* (1955) 134 Cal.App.2d 333,

340 [285 P.2d 977], and *Black* v. *Caruso* (1960) 187 Cal.App. 2d 195, 201 [9 Cal.Rptr. 634].

The court in our case committed no error.

2. *Is plaintiff entitled to a new trial against defendant doctors?*

Plaintiff contends that the liability of the doctors was so interrelated with that of the hospital that the erroneous dismissal of the hospital resulted in prejudice to plaintiff in her case against defendant doctors, and that on a retrial of the case against the hospital alone plaintiff might be prejudiced because the doctors might testify that the nurses were their servants. Dr. Avery in his testimony did accept responsibility for the acts of the nurses. The case against the doctors was tried upon the theory of res ipsa loquitur, requiring the doctors to explain the injury and to show their freedom from negligence. Dr. Morgan and Dr. Norcross were of the opinion that the injury was due to the pressure of the baby's head on the nerve root of the lumbo-sacral plexus as the baby passed through the pelvis down the birth canal, and that the injury was one of the uncommon and fairly rare but known complications of difficult delivery which the attending obstetrician could do nothing about. Thus there was presented to the jury flatly the question of whether the negligence of the doctors presumed under the doctrine of res ipsa loquitur, plus the evidence that plaintiff's leg was placed too high or too tight in the stirrup, or the difficulty of the delivery, without negligence, was the cause of the injury. This issue the jury decided. On the trial of the case against the hospital the issues will be practically identical with those which have already been passed upon, except that there may be an issue as to whether the defendant hospital had any control or right to control its employees in view of Dr. Avery's testimony as to their responsibility to him. Then the question will be whether the presumption of negligence by defendant hospital from the doctrine of res ipsa loquitur, plus the evidence concerning the position of plaintiff's leg in the stirrup, or the difficulty of the delivery without negligence, was the cause of the injury. Whether there is or is not a new trial against the doctors cannot cause a change in the testimony of the doctors. It is difficult to understand how a retrial of the issues as to the doctors is necessary to try the issues as to defendant hospital.

The cases cited by plaintiff do not support her contention

that a new trial should be granted in the doctors' case. In *Whalen* v. *Smith* (1912) 163 Cal. 360 [125 P. 904, Ann. Cas. 1913E 1319], the court in holding that on an appeal from a portion of a judgment the reviewing court had no jurisdiction to reverse the entire judgment, stated that there might be cases in which the part appealed from might be so interwoven that the appeal from a part affected the whole of the judgment. In our case we are not dealing with a part of a judgment, but with a separate judgment.

In *Hoffmann* v. *Lane* (1936) 11 Cal.App.2d 655 [54 P.2d 477], the plaintiff recovered judgment against the owner of a truck and its driver for personal injuries received as a result of the negligent operation of the truck by the driver. The plaintiff was not satisfied with the amount of the judgment. He moved for a new trial as to the defendant owner. His motion was granted. Both the defendants assigned as error the granting of a new trial as to the owner and not as to the driver. The court said (p. 661): "The granting of a new trial as to one of several independent tort-feasors, found jointly liable for negligence, does not vacate the judgment against the remainder. (*Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151 [86 P. 178].) But if the rights and liabilities of the codefendants are interdependent or those of one are entirely dependent on the other, the judgment should be treated as an entirety, and, if vacated as to the one upon whom the other's rights depend, also as to the latter. (*Bishop* v. *Superior Court*, 59 Cal.App. 36 [209 P. 1012]; *Hamilton* v. *Prescott*, 73 Tex. 565 [11 S.W. 548]; *Stotler* v. *Chicago & A. Ry. Co.*, 200 Mo. 107 [98 S.W. 509].) The defendant Lane could not be held liable as owner of the auto truck upon either of the three theories advanced by the plaintiff until the negligence of the defendant Brasesco as the proximate cause of plaintiff's injuries had been established." Hence the owner was entitled to participate in the redetermination of the question of the driver's negligence. Obviously the owner's liability was entirely dependent upon the negligence of the driver. In our case, although charged as joint and concurrent tort feasors, the defendant doctors were found by the jury to be entirely free of negligence and hence not tortfeasors at all.

*Bishop* v. *Superior Court* (1922) 59 Cal.App. 46 [209 P. 1012], held in an action for breach of contract that as the liability of the principal was entirely dependent upon that of his agent, when the court granted a new trial on the motion

of the agent, it properly granted the principal's motion later made to vacate the judgment as to the latter, even though the principal had made no motion for new trial. In doing so, however, the court pointed out that where the rights and interests of the defendants are distinct as where they are joint tortfeasors, the granting of a motion for new trial made by one defendant does not operate to set aside a judgment against a codefendant.

*Bradley* v. *Rosenthal* (1908) 154 Cal. 420 [97 P. 875, 129 Am.St.Rep. 171], dealt with a situation in which the jury found in favor of one defendant and against the other. On appeal by the defendant against whom the verdict was rendered it was held that the evidence showed that the latter defendant could only be held for negligence on the theory that the other defendant was its agent. Therefore the court reversed the judgment against the one defendant and in favor of the other.

In *Gardner* v. *Marshall* (1944) 24 Cal.2d 686 [151 P.2d 122], a personal injury case, the defendants were a corporate employer and its employee. The court held that it was improper to deny the employer's motion for new trial where a prior order granted the employee a new trial on the ground of excessive damages, for if the damages awarded were excessive as to the employee, they were likewise excessive as to his employer.

In *Ferroni* v. *Pacific Finance Corp.* (1943) 21 Cal.2d 773 [135 P.2d 569], in an automobile accident case, judgment was rendered against the defendant finance company and in favor of a used car dealer. It was held that the judgment must be reversed as to the company because of the erroneous exclusion of evidence to show it was not the owner and that to avoid inconsistent judgments the judgment for the dealer whom the company claimed to be the owner must also be reversed. Obviously the question of ownership was so interrelated that it required that the case be retried as to both parties.

*Vyn* v. *Northwest Casualty Co.* (1956) 47 Cal.2d 89 [301 P.2d 869], like the above mentioned cases, is not in point. There the plaintiff was insured by three public liability insurers. The trial court found that only one of them was liable because the policies of the other two were excess policies. On appeal, the judgment against the one insurer was reversed for insufficiency of the evidence to show that it had insured the plaintiff. Although it alone appealed, the court properly

held that the basis for exonerating the others had failed and that on retrial the question would be which of the latter two was liable for the whole or any part of the loss, and that the judgment in their favor must be reversed although no appeal was taken therefrom.

*Winkler* v. *Southern Calif. etc. Medical Group* (1956) 141 Cal.App.2d 738 [297 P.2d 728], was a malpractice action brought against a doctor and his employees. The court reversed a judgment against the employer for erroneous instructions and then reversed the judgment in favor of the employees, stating that as the employer's liability could rest only on respondeat superior and it could not be determined on what basis the jury returned a verdict in favor of the employees while returning one against him, the judgment in favor of the employees would have to be reversed for a new trial on the issues framed by the pleadings as to the employee's negligence.

As there are no decisions in California supporting plaintiff's theory, plaintiff has cited three cases from other jurisdictions: *Fabrizi* v. *Golub* (1947) 134 Conn. 89 [55 A.2d 625]; *Smith* v. *Flannery* (1956) 383 Pa. 526 [119 A.2d 224]; and *Tedeschi* v. *Silver Rod-Paterson* (1951) 15 N.J. Super. 322 [83 A.2d 341]. In *Fabrizi*, the plaintiff sued the Golubs and the city of Hartford for injuries suffered when she fell into the well of a stairway located in a sidewalk adjacent to the Golubs' property. The jury rendered judgment against the city and in favor of plaintiff. The reviewing court held that under the evidence and the issues framed by the pleadings the decision in favor of the Golubs was so inconsistent with one against the city that the verdict and judgment would have to be set aside because of that inconsistency. In our case there is no inconsistency. All of the issues which plaintiff could raise against defendant doctors were raised and passed on by the jury and were separate and distinct from those which could be raised against the defendant hospital and which will be raised in the trial of the defendant hospital's case.

In *Tedeschi*, the defendant Silver Rod-Paterson operated a drug store. The defendant Macchiarelli, a garbage collector, was collecting garbage from the Silver Rod cellar. The plaintiff sued for injuries received by her in being struck by a box of garbage thrown from the cellar through open sidewalk doors. The plaintiff testified that she saw the box thrown by

both Macchiarelli and an employee of Silver Rod. The trial court entered judgment in favor of Silver Rod on the ground that Macchiarelli was not its employee or agent, but was an independent contractor. The reviewing court held that under the plaintiff's testimony Silver Rod's agent participated in the throwing of the box and therefore the case should have gone to the jury as against Silver Rod as well as Macchiarelli. The court then pointed out that under the New Jersey Practice Act and the court rules adopted thereunder, the court was vested with discretion as to whether or not in a joint tortfeasor case a reversal should be as to all defendants. It then said that although there was no exact counterpart in the present rules, it had been held in *Ferry* v. *Settle* (1951) 6 N.J. 262 [78 A.2d 264], that the court still had discretionary power to order a new trial as to all defendants. It quoted from *Ferry* (p. 266 [78 A.2d]) : " 'Each case in which the present or a similar problem is presented must be considered and decided in the ambit of its own peculiar facts and circumstances.' " (P. 343 of 83 A.2d.) It then exercised its judicial discretion and ordered a new trial as to both defendants.

It is interesting to note that the *Ferry* case upon which the court in *Tedeschi* relied was decided by four justices of the New Jersey Supreme Court, with three justices dissenting. The majority opinion stated: "The liability of all these four defendants arose out of an intermingled group of facts and circumstances presented to the jury as a *composite* picture." (P. 266 [78 A.2d] ; emphasis added.) The court further said that a specific rule then in effect gave the appellate courts discretion to order a new trial as to less than all the parties and issues. It then pointed out that the practical effect of a prior judgment of the Appellate Division was to set aside the verdict of the jury which had been against all the four defendants.

No case has been decided in California holding that the court has such discretion, nor does it appear, in view of the full and complete trial of the issues as against the doctors here, that were there such discretion, it should be exercised in favor of granting a new trial as to all defendants.

*Smith, supra,* involved a right angle collision between two automobiles, one driven by the plaintiff Smith, the other by the defendant Flannery. Smith sued Flannery, who counterclaimed against him. One Helen Ranson, the owner of and

riding in the Smith car, and the administrator of the estate of Helen Russell who was killed while riding in the Smith car, also sued Flannery. Flannery had Smith brought into the latter action as an additional defendant. The trial court declared Smith guilty of contributory negligence as a matter of law, nonsuited his action and instructed the jury to find against him in the Russell estate action, and nonsuited Ranson in her action against Flannery because of Smith's negligence being imputed to her as owner of the car. The jury rendered a verdict in favor of Flannery for $15,500 on his counterclaim against Smith, and a verdict in favor of the Russell estate against Smith for $5,500 and in favor of Ranson against Smith for $1,000. The trial court then granted a new trial on the counterclaim of Flannery against Smith. The reviewing court held (p. 227 [119 A.2d]) that its "erroneous decision that Smith was guilty of contributory negligence as a matter of law [so] permeated the entire proceedings and necessarily vitiated the results reached in each and all of the actions" that they all must be retried. Obviously, this was an entirely different situation from that in our case. Likewise, none of the cases cited are similar in any way to this case nor are they in point here.

We see no reason, in view of the fact that the issues between plaintiff and defendant doctors were fully tried, for ordering a new trial thereof.

The order granting plaintiff a new trial as to defendant hospital is affirmed. Plaintiff's appeal from the judgment in favor of defendant hospital is dismissed. The judgment in favor of defendant doctors is affirmed. Plaintiff shall recover costs on appeal.

Tobriner, J., and Sullivan, J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied March 28, 1962.