[Civ. No. 4131. Fourth Dist. Nov. 28, 1950.]

SADIE GRAY et al., Respondents, v. RICHARD A. CARTER et al., Appellants.

Elber H. Tilson and E. Spurgeon Rothrock for Appellants.

Willis T. Lyman for Respondents.

BARNARD, P. J.—This is an action for damages arising from a fall in a hospital operated by the defendants.

Sadie Gray, who was 75 years old, entered this hospital on September 10, 1946. She had suffered from arthritis for some years and required help in dressing and undressing, but was able to walk without a cane. At the time of entering the hospital she was agitated, confused and depressed, and was not eating well. She was assigned to a unit in which there were three other old ladies. There were two regulation hospital beds, two lower type beds, a table and two or three chairs in the room. She was given certain treatments to which she responded satisfactorily, and she was very much improved at the time here in question. About 6 or 6:15 p. m. on November 12, 1946, she was found on the floor of this room near a bed, with an overturned chair beside her. She suffered a fractured hip and was still bedridden at the time of the trial.

This action was brought by Mrs. Gray, through a guardian *ad litem* appointed for that purpose, and by her four adult daughters. The only material evidence produced was the testimony of a nurse, of two of the adult daughters, and of Dr. Carter who was called under section 2055 of the Code of Civil Procedure. Motions for a nonsuit and for a directed verdict were denied, and the case was submitted to the jury without further evidence from the defendants. The jury returned a verdict in favor of the plaintiffs for $9,000 and the defendants have appealed.

Appellants' main contention is that the evidence is insufficient to support the jury's implied finding of negligence on their part. The respondents argue that the appellants should have anticipated that Mrs. Gray, because of her arthritis, might fall in attempting to get into bed unless she was assisted in so doing. It is also argued that the appellants, as reasonable persons, and knowing her condition and the care generally exercised by hospitals in that community, should have anticipated that such an injury was likely to happen to one in her mental condition.

■ While the duty of care imposed on a hospital may under some circumstances extend to safeguarding the patients from dangers due to mental incapacity, it is well settled that a private hospital is not an insurer of a patient's safety, and the amount of care required is limited by the usual rule that no one is required to guard against something which a reasonable person, under the circumstances, would not anticipate as likely to happen. (*Wood* v. *Samaritan Institution*, 26 Cal.2d 847 [161 P.2d 556].) Aside from speculation and conjecture, we can find nothing in the record here which would justify a conclusion that the appellants should reasonably have anticipated that Mrs. Gray was likely to sustain such a fall.

■ The evidence shows without conflict, and the respondents concede in their brief, that "between September 10, 1946, to and including November 12, 1946, Mrs. Gray received the usual nursing care of a sick patient." There is no evidence that any other kind of care was contracted for. The only evidence in that connection is that of one of the adult daughters who testified that when Mrs. Gray was admitted to the hospital she talked with Dr. Carter, and that nothing was said other than that Dr. Carter stated that Mrs. Gray would receive "only general nursing care." Under respondents' theory Mrs. Gray would have required special nursing care at all times, but there is no evidence that any such care was either expected or contracted for.

There was no evidence as to how the accident happened. Mrs. Gray's deposition was not taken, there was no testimony of any eyewitness to the accident, and there was no evidence of anything wrong in the condition of the floor or furniture in the room. Even the supposition that Mrs. Gray fell while trying to get into bed rests entirely on conjecture. She was fully dressed at the time, and there was no evidence that she had made any preparation to go to bed. A nurse was on duty in that unit most all of the time during the 24 hours, caring for from three to six patients. This nurse was attending to her duties in a room two doors away, when another nurse came and told her that Mrs. Gray had fallen. This nurse would have come, in the usual course, and have assisted Mrs. Gray in going to bed, at the proper time. Mrs. Gray had been thus assisted for more than two months and there was nothing here to indicate she would try to go to bed earlier, without assistance, if that is what she did.

There is no evidence that Mrs. Gray had suddenly become so mentally incompetent as to call for extra or unusual pre-

cautions in caring for her, in addition to that contracted for. While she was confused and agitated when she entered the hospital, one of her daughters testified that she was not insane; that her condition was "something that comes to a great many people by reason of advanced years"; and that she was forgetful about little things. Both daughters and the doctor testified that her mental condition had greatly improved during the two months she had been in the hospital. The "general nursing care" contracted for had theretofore been sufficient, and there is no evidence which would support an inference that the appellants had any knowledge of any change in her mental condition which should have caused them, as reasonable persons, to anticipate that such a thing was likely to happen.

The evidence is that before she was taken to this hospital Mrs. Gray was up and around at all times, although she required some assistance in dressing and undressing because of her arthritis. At the hospital, she was up and dressed and walking around every day, and she liked to help the nurses in folding linen and doing other things of that type. There is nothing in the record which would in any way indicate any previous warning to the appellants that any such thing was likely to happen, or that Mrs. Gray required anything other than the usual "general nursing care" which the respondents admit had been contracted for. While the record shows that Mrs. Gray somehow fell to the floor, there is no evidence as to how or why she fell, and none which would tend to show that she fell by reason of any negligence or carelessness on the part of appellants.

It may be said here as was said in *Blunk* v. *Atchison T. & S. F. Ry. Co.*, 97 Cal.App.2d 229 [217 P.2d 494]: "It must be concluded that as a matter of law plaintiff failed to present probative facts from which the jury could reasonably infer negligence and proximate cause. The present verdict can be upheld only by resort to speculation. . . . We may not and should not transform liability for negligence into liability as an insurer."

It becomes unnecessary to consider the other points raised by the appellants.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.