[Civ. No. 4606.   Fourth Dist.   Feb. 16, 1953.]

TILDA S. ERICSON et al., Appellants, v. MRS. L. C. PETERSEN, Respondent.

Wild, Carlson & Reeve and Robert M. Barnard for Appellants.

Lawrence W. Young and James M. Thuesen for Respondent.

GRIFFIN, J.—Plaintiffs and appellants, husband and wife, brought this action for damages, alleging that Mrs. Ericson suffered injury while a patient in a sanitarium operated by defendant and respondent. Defendant denied negligence and alleged contributory negligence on the part of the plaintiffs. The court made detailed findings, and found in favor of defendant on all issues. Plaintiffs appealed and claim mainly that the evidence is insufficient to justify the finding that

defendant was not negligent and that plaintiff Mrs. Ericson was guilty of contributory negligence which was the proximate cause of her injury.

The evidence shows that she was about 74 years of age and had suffered a stroke in 1949, leaving her left side affected. In March, 1950, she fell while in her home and broke her leg. She has been practically bedridden ever since. She was in the Community Hospital and later in the Collins Rest Home, until March 27, 1950. Mr. Ericson investigated defendant's licensed rest home, which contained 44 beds. Sixteen of the patients were bed patients. In the daytime eight nurses and an orderly were on duty. On the night shift there were as high as six nurses part time. Mrs. Ericson was brought to the home on May 27, 1950. The rate for her ordinary care was $150 per month, which was paid in advance. She was confined to a regular hospital bed. Later, side-rails, about 19 inches in height such as are ordinarily used in hospitals, were securely attached to the bed. The outside, or highest rail, was attached by wire covered with a stocking. The inside or lower rail near the wall, was attached by a clamp at the head and foot of the bed, and was tied to the bed by means of a shoe lace in a bow knot, with two hook clamps so that it could be let down when the nurse was making the bed or bathing the patient. The patient was "confused" and, even in the other home and hospital, continually expressed a desire to return to her home. Mr. Ericson visited with his wife on several occasions and expressed his entire satisfaction with the care given her, although defendant indicated to him that the patient showed considerable nervousness during the night and she suggested special nurse's care. Apparently Mr. Ericson was satisfied with the general care given to the patient and knew that a nurse would not be with his wife at all times. Plaintiff's attending physician never indicated that any restraint, other than the side-rails, should be considered to keep the patient from climbing out of bed. Two other patients were in the same room, which room was nearest the nurse's call desk. Each patient had access to a call bell.

About 4:45 p. m. on June 1st, a nurse prepared the patient for dinner. Both rails were up and the bed was against the wall. The nurse rolled the mattress up in a reclining position and placed the tray on the bed preparatory to feeding her. Several other nurses testified that just previous to

this time the rails were up and were securely clamped and tied. About 5 p. m., after checking the rails and general conditions, the nurse momentarily left the room to look over a chart at the desk. Soon thereafter, she heard a commotion and immediately returned to the bedroom and saw Mrs. Ericson sitting on the floor pushing the bed away with her foot. At that time the inside rail was down and the leather shoe lace was untied and on the floor. The bed was about 3 feet from the wall. The doctor and the patient's husband were called and it was discovered that the patient had a fractured hip bone.

The husband and his daughter testified to a little different version of the position of the one rail and the bed clothing when they arrived several hours later. The case was heard by the court without a jury.

It is plaintiffs' contention that under the evidence they were entitled to the application of the doctrine of res ipsa loquitur, and if applied, the court was duty bound to find in favor of plaintiffs since an inference of negligence arose by reason of its application, and since any explanation given by defendant as to the cause of the injury was physically impossible, and since Mrs. Ericson was paralyzed, the side-rail could not have been removed or let down by her, and therefore it must have been left in that position by the attending nurse when she left the room. It is then argued that it is the duty of a hospital to use reasonable care and diligence in safeguarding a patient committed to its charge, and such diligence is to be measured by the capacity of the patient to take care of herself, citing such cases as *Thomas* v. *Seaside Memorial Hospital,* 80 Cal.App.2d 841 [183 P.2d 288] ; *Valentin* v. *La Societe Francaise,* 76 Cal.App.2d 1 [172 P.2d 359] ; *Meyer* v. *McNutt Hospital,* 173 Cal. 156 [159 P. 436] ; *Timbrell* v. *Suburban Hospital, Inc.,* 4 Cal.2d 68 [47 P.2d 737] ; and *Ybarra* v. *Spangard,* 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258]. The cases relied upon by plaintiffs are factually dissimilar to those in the instant case.

The applicability of the doctrine of res ipsa loquitur is fully discussed in *Ybarra* v. *Spangard, supra,* and it is there said:

"The doctrine of res ipsa loquitur has three conditions: ' (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the ex-

clusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' "

It further recites that: " 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' " (Citing cases.)

From the evidence, viewed in a light most favorable to the defendant, as we must, it appears that the proximate cause of the injury was due to the action of Mrs. Ericson. The chief evidence of the true cause was accessible to the injured person. Therefore, the doctrine would not apply. (*Black* v. *Partridge,* 115 Cal.App.2d 639, 649 [252 P.2d 760].)

Plaintiffs endeavor to avoid the effect of this evidence by concluding that Mrs. Ericson, by reason of her mental condition, was unable to explain the happening of the accident. The court made a specific finding that at the time plaintiff got out of the bed she was mentally normal and knew the significance of her own acts. The evidence on this question is various.

Plaintiff's attending physician for some years, testified that in March, 1950, she had a determined increase of mental confusion and that in June, 1950, she was still "mentally confused"; that on the day of trial, December 3, 1951, she was greatly improved as to her mental condition, but could not come to court to testify because of her mental incompetency; that what he meant by "incompetent" was that she was not able to take care of her affairs in a rational manner.

The defendant and the nurse testified generally that when Mrs. Ericson was in the home her mental condition was good; that she carried on a good conversation but that her chief subject of complaint was that she was tired of hospitals and wanted to get out of bed and go home.

Plaintiffs' daughter testified that on May 30th and 31st she went to the rest home and carried on a conversation with her mother; that she talked about the past most of the time but could answer intelligently questions asked of her in a conversation. The husband testified his wife was not confused all the time; that she intelligently answered some of his questions and others she did not; that his wife was "not insane," just "mentally confused" part of the time.

Plaintiffs argue that the testimony of the attending physician should be accepted as true and the other testimony as to her sanity disregarded. They lay considerable stress upon a notation made by defendant written on a refund check bearing the word "mental." Defendant accounts for this by saying that she meant "confused" and the notation was placed thereon because the bookkeeper always wanted to know the reason for the refund. It appears from the evidence that the question of plaintiff's mental capacity was a question of fact for the trial court to determine. (*Rose* v. *Melody Lane*, 39 Cal.2d 481, 487 [247 P.2d 335].)

Defendant produced in evidence certain rules and requirements of the State Department of Health pertaining to rest homes, and in particular article 9, section 246(a) thereof, which provides:

"RESTRAINTS. (1) GENERAL. Restraints may be applied only when they are necessary to prevent injury to the patient or others, shall be used only when alternative measures are not sufficient to accomplish these purposes, and on written order of the physician."

There is sufficient evidence supporting the finding that neither defendant nor her agents were negligent at the time of the claimed injury, even if it could be said that the doctrine of res ipsa loquitur was applicable to the facts presented. Only a conflict in the evidence would arise for the determination of the trial judge. The finding is supported by substantial evidence and this court is not authorized to reweigh evidence. (*Lockard* v. *Matlaw*, 140 Cal.App. 640 [35 P.2d 591]; *Burton* v. *Los Angeles Ry. Corp.*, 79 Cal.App.2d 605 [180 P.2d 367].)

In *Gray* v. *Carter*, 100 Cal.App.2d 642 [224 P.2d 28], this court reversed a judgment for plaintiff and held the evidence was insufficient to support a verdict awarding a sanitarium patient damages as a result of a fall in her room where it appeared that plaintiff, who was suffering from arthritis, received the general care of a sick patient and there was no evidence that any nursing care was expected or contracted for, no indication as to how or why she fell, and no evidence which would support an inference that defendants had any knowledge of any change in plaintiff's mental condition which would have caused them, as reasonable persons, to anticipate that she was likely to fall. Many cases are cited therein supporting the judgment here rendered.

A final claim is made that another patient was in

the room at the time and should have been called by defendant as a witness to show what was the cause of plaintiff's fall; that by reason of defendant's failure to call her, it must be inferred that her testimony would have been adverse to defendant, citing section 1963, subdivision 5 of the Code of Civil Procedure. The evidence is that one of the patients in the room with Mrs. Ericson subsequently died and the other was a bed patient at the time. There is no showing that that patient was awake or observed the plaintiff or that she knew anything pertaining to the cause of plaintiff's injury. She was available to plaintiff as a witness, as well as to defendant. There is no showing that defendant willfully suppressed any evidence. Where there was substantial evidence to support the judgment, the effect of any failure on the part of defendant to call a witness was a matter to be considered by the trial court. (*Moore* v. *Spremo*, 72 Cal. App.2d 324 [164 P.2d 540].)

Judgment affirmed.

Mussell, J., concurred.

Barnard, P. J., being disqualified, did not participate herein.

Appellant's petition for a hearing by the Supreme Court was denied April 15, 1953.