[Civ. No. 23185. First Dist., Div. One. Mar. 30, 1967.]

GIN NON LOUIE, Plaintiff and Respondent, v. CHINESE HOSPITAL ASSOCIATION, Defendant and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson for Defendant and Appellant.

John J. Fahey and James J. Igoe for Plaintiff and Respondent.

SIMS, J. — Defendant, Chinese Hospital Association, a corporation, has appealed from a judgment of $50,000[1] entered upon a jury verdict in favor of plaintiff, Gin Non Louie, in an action in which he sought damages for injuries suffered in a fall from his bed while a patient in that hospital recovering from an operation.[2]

The defendant complains that the trial court erred in instructing the jury in the following particulars: (1) by modifying an instruction offered by the defendant, which was designed to preclude the plaintiff's reliance on a presumption of due care, so as to inferentially permit consideration of such presumption without the establishment of proper conditions precedent to its use; (2) by instructing the jurors that they could resort to their common experience and reason in deciding whether the conditions giving rise to the event which occasioned plaintiff's injuries were caused by defendant's negligence; and (3) by giving an instruction on the doctrine of res ipsa loquitur which was erroneous in form.

It is concluded, for the reasons, and in the particulars hereinafter set forth, that there were errors in the instructions, but that under the facts of the case they were not prejudicial. The judgment must therefore be affirmed.

*The Facts*

Gin Non Louie, the plaintiff, is a non-English speaking Chinese male, about 60 years old. He has a history of neurosyphilis with consequent deterioration of the body and brain.

On January 30, 1961, plaintiff entered the Chinese Hospital, San Francisco, for treatment of a gastric ulcer. Plaintiff's

---

[1] Pursuant to a stipulation and the pretrial order entered in the proceedings, the judgment is subject to a lien of the City and County of San Francisco for the value of medical services furnished the plaintiff.

[2] A judgment of nonsuit was entered in favor of the plaintiff's attending surgeon who had been joined as a defendant.

physician, Dr. Edwin Owyang, called in Dr. Frank J. Choy as surgical consultant. On February 2, 1961, Dr. Choy performed a subtotal gastric resection on Mr. Louie. On February 24, 1961, Dr. Choy performed a second operation to correct a stomal obstruction. On February 27, 1961, at 2:40 a.m., a nurse at the hospital heard a thump, and found Mr. Louie on the floor next to his bed. The siderails were up on plaintiff's bed at the time he fell.

On February 27, 1961, at 7 a.m., Dr. Choy examined plaintiff and diagnosed his injury as a fractured hip. He has since needed extensive hospitalization and convalescent care in connection with his hip injury. Mr. Louie, at the time of trial, was a patient at a convalescent home. His hip will never heal. His ability to walk is very limited, and he needs continuing attention.

The remaining material facts are discussed below.

*Instruction on Due Care*

The testimony of the plaintiff's regular physician, of the surgeon who performed the operation and who was attending him, and of the day nurse on duty, reflects that on the day preceding the accident he was alert enough to talk and answer questions, and was not disoriented or confused. The evening nurse noted at 7 or 8 p.m., "Patient appears slightly confused at times." The night supervisor noted at 12:45 a.m. that he "seems confused."

The following morning after the accident the day nurse recorded: "Patient seems to be very clear in mind and responds to conversation," and the surgeon found him alert and oriented and not confused in any regard. The day nurse acted as interpreter when the surgeon interrogated the patient concerning the accident, and testified that the patient told her then, as he had previously stated when she made her rounds, that he tried to get a glass of water, that he got out through the foot of the bed and fell. Plaintiff's regular physician, who spoke Chinese, also testified that the patient told him that he had tried to get out of bed and fell down.

The latter doctor, who had been treating the plaintiff since 1958, revealed that Mr. Louie had been treated for syphilis since 1943, that the syphilis was a progressive disease which would affect his nervous system and his brain, and that it was possible for him to have been clear and alert on February 27, 1961, the day of the accident, in regard to what happened to him at that time, but unable to remember what did happen to him at the time of trial (April 1965).

At the trial plaintiff testified that his memory was getting progressively worse. He remembered that he went to the hospital for stomach trouble and that he was operated on, but did not know the dates. He first noticed a pain in his hip while lying in bed. He could not remember falling out of bed, or discussing the fall with his surgeon. He testified that there was a day nurse who was Chinese and with whom he spoke in his native tongue, and that after the accident his leg was suspended, or in traction, for quite a long while.

He remembered that his deposition was taken in 1963, but could not remember what he said at that time. The deposition contains testimony which indicates that at that time, 1963, he recalled and admitted conversing with the nurses about the accident, but could not remember what he told them.

On this state of the evidence, plaintiff offered no instruction on due care. (Cf. Code Civ. Proc., § 1963, subd. 4; and Cal. Jury Instns., Civ. [BAJI] (1964 pocket parts to 4th rev. ed. 1956) No. 135-B.)[3] Apparently out of an abundance of caution the defendant offered an instruction reading as follows: ''You are instructed from the mere fact, if it is a fact, that the plaintiff in this case claims a lack of memory of the events occurring at the time of the accident there would not be any presumption in favor of the plaintiff concerning his exercise of care at the time in question.''

The trial court, on its own motion, modified this instruction by the addition of the following language: ''Before one is entitled to such a presumption the jury must find by preponderance of the evidence that there was a lack of memory of events just preceding and about the time of the accident.''

■ Although plaintiff argues to the contrary, it is impossible to escape the conclusion that the court, whether intentionally or inadvertently, ambiguously instructed the jury that although a mere claim of loss of memory would not suffice to give rise to the presumption of due care, such a presumption would arise if the jury found from a preponder-

---

[3]Instructions concerning the presumption of ordinary care by a deceased or by a person suffering loss of memory now have been disapproved. Code Civ. Proc., § 1963, subd. 4, was repealed effective January 1, 1967 (Stats. 1965, ch. 299, § 110, p. 1363), and Evid. Code, § 600, abrogates the rule that a presumption is evidence to be weighed against conflicting evidence. (See Evid. Code, § 521 and Law Revision Commission Comment, and § 600 and Legislative Committee Comment; and California Jury Instructions, Civil [BAJI] (1967 Cumulative Pocket Parts to 4th rev. ed. 1956) Note to No. 135-A.) Although the prior law is applicable to the trial under review, it would not apply to any new trial of the action. (Evid. Code, § 12, and Legislative Committee Comment.)

ance of the evidence that the claimed loss of memory did in fact exist.

As so interpreted the instruction as modified was patently erroneous. ██ "A requirement for invocation of the presumption in amnesia cases is that the loss of memory was induced by brain injury suffered as a result of the accident in question. (*Kumelauskas* v. *Cozzi* (1959) *supra,* 173 Cal.App.2d 541, 544 [343 P.2d 605], and cases cited.)" (*Brown* v. *Connolly* (1965) 62 Cal.2d 391, 396 [42 Cal.Rptr. 324, 398 P.2d 596]. In addition to the case cited see, *Beck* v. *Kessler* (1965) 235 Cal.App.2d 331, 340 [45 Cal.Rptr. 237]; *Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 651-658 [35 Cal.Rptr. 11]; and *Johnson* v. *Popso* (1961) 194 Cal.App.2d 449, 455 [14 Cal.Rptr. 834].)

██ The instruction was not only erroneous for lack of the foregoing qualification, but it also would have been inappropriate to give it, even if in correct form (cf. BAJI (1964) *supra,* No. 135-B), because of a lack of any evidence to show that the accident resulted in a loss of memory. (*Beck* v. *Kessler, supra,* 235 Cal.App.2d at p. 341.)

Plaintiff acknowledges the applicability of the foregoing rules to the instruction in question, but he asserts that the record justifies an inference that the accident was a contributing cause to the progressive loss of memory. (See *Hughes* v. *City & County of San Francisco* (1958) 158 Cal.App.2d 419, at pp. 420 and 425 [322 P.2d 623], and comment thereon in *Hom* v. *Clark, supra,* 221 Cal.App.2d at p. 656.) There is some evidence to show that plaintiff's loss of memory at the time of trial was occasioned by progressive degeneration from syphilis. There is not, however, a scintilla of evidence to justify a finding, as suggested by plaintiff, that the accident aggravated or in any way contributed to that degenerative process.

Plaintiff further contends that defendant invited the error by offering the instruction in the form proposed. ██ "Under the doctrine of 'invited error' a party cannot successfully take advantage of error committed by the court at his request. . . . He cannot complain of error in instructions requested by him. [Citations.]" (*Jentick* v. *Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343]; and see *Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 207 [30 Cal.Rptr. 253]; and *Dowd* v. *Atlas Taxicab etc. Co.* (1924) 69 Cal.App. 9, 14 [230 P. 958].)

██ "The doctrine of invited error does not apply where the instruction objected to on appeal contains elements or

additions substantially different from that contained in the *instruction submitted by appellant, particularly where such instruction is prejudicial to him and is not the law. (Baker v. Borello, 131 Cal. 615, 616-617 [63 P. 914]; Dowd v. Atlas Taxicab etc. Co., 69 Cal.App. 9, 14 [230 P. 958].)''* (*Gipson v. Davis Realty Co., supra,* 215 Cal.App.2d at p. 208.) ▆ In the instant case the court's additions changed a correct instruction into an erroneous instruction. Plaintiff cannot find refuge in the principle that the modification merely corrected the proponent's erroneous instruction. (Cf. *People* v. *Long* (1940) 15 Cal.2d 590, 605-606 [103 P.2d 969]; and *Baker* v. *Borello* (1901) 131 Cal. 615, 616-617 [63 P. 914].)

▆ In *Kumelauskas* v. *Cozzi* (1959) 173 Cal.App.2d 541 [343 P.2d 605] the court failed to leave to the jury the question of whether there was in fact a loss of memory, despite evidence which conflicted with the plaintiff's testimony that he had no recollection of the accident. The court concluded: ''[D]efendant pleaded plaintiff was contributively negligent. From the evidence, the jury could reasonably have drawn the inference either way on the vital issue of plaintiff's contributory negligence. The giving of the instructions in question manifestly added strength to plaintiff's contention that he was acting with due care for his own safety, and thus overemphasized his claim in the minds of the jury. Defendant was thereby compelled to overcome by a preponderance of the evidence not only any testimony favorable to plaintiff's claim that he was free from contributory negligence, but also the presumption that he was acting with due care.'' (173 Cal. App.2d at p. 547.)

Defendant asserts that the same considerations are present in this case, and that they demonstrate that the error is prejudicial. Furthermore, it directs attention to the instructions on the nature of evidence, both those which were given and those which were offered and were rejected by the court, as further prejudicing its position.

Defendant requested by reference, and by proffer of a typed form, an instruction on direct and indirect evidence which recited in part: ''A presumption is a deduction which the law expressly directs to be made from particular facts. *Unless declared by law to be conclusive, it may be controverted by other evidence. If it is not controverted, the jury is bound to find in accordance with the presumption.*'' (Italics added; see BAJI (1964) *supra,* No. 22 (rev.).) The court on its own motion gave an instruction on the same subject matter which

substantially covered most of the same material as was contained in that offered by defendant, but which omitted the language emphasized above.[4]

Defendant urges that the effect of the two instructions was to erroneously tell the jurors that if they found from a preponderance of the evidence that the plaintiff had a lack of memory of events just preceding and about the time of the accident (regardless of how such lack of memory was caused or when it arose), the law expressly directed them to find in favor of plaintiff on the issue of whether he was exercising due care at the time in question.

The question of whether the foregoing considerations demonstrate prejudice which necessitates a reversal in this case is deferred for consideration in the light of all the evidence.

### Instruction on Common Knowledge

The court instructed the jury that if the defendant hospital undertook to render nursing services to the patient it had the duty to perform such service in accordance with the general standard of care for nurses. In defining the duty of a nurse the court gave a general instruction on the knowledge and skill which is required to be possessed and exercised by a trained or graduate nurse (see BAJI, *supra*, No. 214-D) and after the qualification heretofore noted (fn. 9, *infra*), stated: "You are instructed that when it is common knowledge that an event or a circumstance that has happened to or developed to a patient is of a kind that ordinarily does not occur in the absence of negligence on the part of a hospital or its nurses, the question whether or not the condition was caused by negligence may be decided from the general circumstances as

---

[4]This instruction reads:

"In an action of this character both direct and circumstantial evidence are admissible, and any facts in this case may be proven by either direct or circumstantial evidence, or by both.

"Direct evidence is that which proved the fact in dispute directly, without an inference or presumption, and which in itself, if true, conclusively establishes that fact.

"Circumstantial or indirect evidence is that which tends to establish the fact in dispute by proving another and which, though true, does not of itself conclusively establish that fact but which affords an inference or presumption of its existence.

"A presumption is a deduction which the law expressly directs to be made from particular facts.

"An inference is a conclusion as to the existence of a material fact that the jury may properly draw from the existence of certain primary facts without an express direction of law to that effect."

shown by the evidence, including defendant's own testimony, and in the light of common experience and reason.''

Similar language, presumably the source of the above, is found in a once recommended exception to the general charge that jurors must look to expert testimony to ascertain the prevailing learning, skill and care ordinarily possessed and practiced by those of a profession (see BAJI, *supra,* No. 214-B at p. 785). Defendant notes that the exception had been deleted by the editors of the recommended forms prior to 1964 with the following comment: ''If expert testimony is not required to establish the standard of care, because the matter is one of common knowledge, no instruction on the point will ordinarily be required.'' (BAJI, *supra,* 1964 Pocket Parts, No. 214-B, Note: republished, 1967 Cumulative Pocket Parts.) The question herein, however, is not whether the instruction was superfluous, but whether it was prejudicially erroneous to so instruct the jury.

The plaintiff's regular physician testified that he believed the nurses followed the usual standards of custom and practice; and exercised the degree of skill and learning exercised and possessed by nurses in the locality. The attending surgeon testified that the three nurses involved were qualified nurses who carried out his orders; and that from his knowledge of the case there was nothing they did which was not up to the standard of care of nursing as it existed at the time.

The nurse on duty as night supervisor testified that neither the information received from her predecessor, nor her own observation between the time she came on duty at 11 p.m. and the accident at 2:40 a.m. alarmed her sufficiently to cause her to notify the doctor.

Defendant contends that the question as to whether there was proper care in the plaintiff's treatment was one to be determined solely by the opinion of experts. It is generally stated: ''The law has never held a physician or surgeon liable for every untoward result which may occur in medical practice. It requires only that he shall have the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same locality and that he shall use ordinary care and diligence in applying that learning and skill to the treatment of his patient. Whether he has done so in a particular case is a question for experts and can be established only by their testimony. And when the matter in issue is one within the knowledge of experts only and is not within the common knowledge of laymen, the expert evidence is conclu-

sive. Negligence on the part of a physician or surgeon will not be presumed; it must be affirmatively proved. On the contrary, in the absence of expert evidence, it will be presumed that a physician or surgeon exercised the ordinary care and skill required of him in treating his patient.'' [Citations omitted.] (*Engelking* v. *Carlson* (1939) 13 Cal.2d 216, 220-221 [88 P.2d 695] ; and see *Simone* v. *Sabo* (1951) 37 Cal.2d 253, 257-258 [231 P.2d 19] ; *Sanchez* v. *Rodriguez* (1964) 226 Cal.App.2d 439, 445 [38 Cal.Rptr. 110] ; and Witkin, Cal. Evidence (2d ed., 1966) § 452, p. 389.)

If it be assumed that the same rule applies to the standard of care of nurses and hospitals, defendant is still faced with the exception recognized in *Engelking,* and subsequently used as a basis for distinguishing the foregoing ruling. Therein, the court observed : ''It is true that in a restricted class of cases the courts have applied the doctrine of *res ipsa loquitur* in malpractice cases. But it has only been invoked where a layman is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised. For example, it has been applied where a sponge was left in the body of the patient after closing an operative incision; where the patient was burned by the application of hot compresses or heating apparatus; where the patient was burned through the operation of an X-ray machine; and where the patient sustained an infection through the use of an unsterilized hypodermic needle. In each one of these situations the rule was applied because common knowledge and experience teaches that the result was one which would not have occurred if due care had been exercised.'' [Citations omitted.] (13 Cal.2d at p. 221; and see *Moore* v. *Belt* (1949) 34 Cal.2d 525, 530 [212 P.2d 509] ; *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687] ; and *Bauer* v. *Otis* (1955) 133 Cal.App.2d 439, 443-446 [284 P.2d 133].)[5]

---

[5]Resort to the doctrine of res ipsa loquitur is not, however, limited, as suggested above, to situations where common knowledge gives use to the inference of negligence. The true rule is now stated : ''In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied on both common knowledge and the testimony of expert witnesses.'' (*Siverson* v. *Weber* (1962) 57 Cal.2d 834, 836 [22 Cal. Rptr. 337, 372 P.2d 97]; and see *Seneris* v. *Haas* (1955) 45 Cal.2d 811, 823-828 [291 P.2d 915, 53 A.L.R.2d 124] ; and see *Cho* v. *Kempler* (1960) 177 Cal.App.2d 342, 349-352 [2 Cal.Rptr. 167, 76 A.L.R.2d 774] ; and *Salgo* v. *Leland Stanford etc. Board Trustees* (1957) 154 Cal.App.2d 560, 568-573 [317 P.2d 170].)

■ "The fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself prove that the injury was probbaly caused by the negligence of those in charge of the operation. (*Wickoff* v. *James,* 159 Cal.App.2d 664, 669 [324 P.2d 661]; *Salgo* v. *Leland Stanford etc. Board Trustees,* 154 Cal.App.2d 560, 569-571 [317 P.2d 170]; *Dees* v. *Pace, supra,* 118 Cal. App.2d 284, 289 [257 P.2d 756].) Language to the contrary in *Valentine* v. *Kaiser Foundation Hospitals,* 194 Cal.App.2d 282, 287 [15 Cal.Rptr. 26], and *McDonald* v. *Foster Memorial Hospital,* 170 Cal.App.2d 85, 102 [338 P.2d 607], is disapproved.

"To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used. Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine should not be applicable unless it can be said that, in the light of past experience, such an occurrence is more likely the result of negligence than some cause for which the defendant is not responsible." (*Siverson* v. *Weber* (1962) 57 Cal.2d 834, 839 [22 Cal.Rptr. 337, 372 P.2d 97]; accord: see *Tangora* v. *Matanky* (1964) 231 Cal.App.2d 468, 473 [42 Cal.Rptr. 348]; *Surabian* v. *Lorenz* (1964) 229 Cal.App.2d 462, 465-466 [40 Cal.Rptr. 410].)

■ Despite defendant's protestation to the contrary, there is evidence, hereinafter discussed, which demonstrates more than a mere rare occurrence, and which tends to show the circumstances which plaintiff asserts constituted negligence. He contends that the facts proved permit a finding that the hospital, through its employees, the nurses, was negligent in failing to advise the attending surgeon of a change for the worse in the patient's condition; and, that if such notification had been given, further medication and supervision, which was in fact subsequently prescribed, would have prevented the accident.

Under these circumstances, the question is not one of the application of the doctrine of res ipsa loquitur which gives rise to a general inference of negligence without attempting to define the act or omission constituting that negligence. It is a question of whether the conduct revealed by the evidence reveals a negligent act or omission, and whether that conduct

can be evaluated by the jury without the assistance of expert testimony.

In *Barham* v. *Widing* (1930) 210 Cal. 206 [291 P. 173], the opinion adopted by the court recites: " 'Under the circumstances of this case there is a remote possibility that the infection developed from some cause other than the defendant's failure to sterilize the needle or the gum into which it was inserted, but the evidence is sufficient upon which to warrant the jury in finding that it was caused by his negligence in failing to follow these reasonable precautions in spite of his testimony to the contrary. The jurors were entitled to accept the solution to which these circumstances led them in preference, even, to the positive statements of the defendant and his nurse to the contrary. . . .' " (210 Cal. at p. 215.)

*Barham* is sometimes cited as an application of the doctrine of res ipsa loquitur. (See *Engelking* v. *Carlson, supra,* 13 Cal.2d 216, 221 and *Moore* v. *Belt* (1949) 34 Cal.2d 525 at pp. 529-531 [212 P.2d 509].) Its true holding, as an application of the proof of negligence by circumstantial evidence, is recognized in the concurring opinion of Chief Justice Traynor in *Quintal* v. *Laurel Grove Hospital* (1964) 62 Cal.2d 154 at p. 175 [41 Cal.Rptr. 577, 397 P.2d 161], wherein he cites it in support of the proposition: "Although there is no expert testimony that the prevailing medical standard of care requires such preparation for a possible cardiac arrest, expert testimony is not required when scientific enlightenment is not necessary to show that failure to make such preparations is unreasonable."

■ "Malpractice is the neglect of a physician or a nurse to apply that degree of skill and learning in treating a patient which is customarily applied in treating and caring for the sick or wounded similarly suffering in the same community. (See Webster's International, Oxford and Bouvier's dictionaries; C. J., Am.Jur.). ■ While proof of it is customarily made by the testimony of experts (*Rasmussen* v. *Shickle,* 4 Cal.App.2d 426, 430 [41 P.2d 184]; *Perkins* v. *Trueblood,* 180 Cal. 437, 443 [181 P. 642]), and while the law makes allowances for human weakness in the application of skill and learning (*Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296 [163 P.2d 860, 862]), the facts of each case must be judged according to their own merits. If the alleged neglect relates to matters or conduct which are reasonably within the ken of the average layman the jury may determine the culpability of the person charged therewith without the

aid of experts. If it relates solely to the exercise of judgment in the application of skill and learning then proof of the negligence must be made by experts.'' (*Valentin* v. *La Societe Francaise* (1946) 76 Cal.App.2d 1, 5 [172 P.2d 359].)

The testimony reveals the following facts concerning the plaintiff's condition and the care he received. The attending surgeon and the evening and night nurses all agreed that it was standard procedure to notify the doctor of a change in the patient's condition. In the words of the doctor: ''I believe if a patient had been say, slightly confused at intervals through the day, and this becomes progressive, then I think I ought to be notified or if his degree of confusion becomes worse, then I should be notified, or if the patient tried to get out of bed or became unmanageable, then I would certainly be notified.''

In addition to the entries in the hospital records which have been referred to above concerning the patient's confusion, the evening nurse at 10:35 p.m. noted, ''Very restless at times all day.'' She testified that Mr. Louie had been acting differently on that day than he had been acting on any prior occasion; that she practically ''specialized''—or gave him all her attention—during that day; that although he was restless he never attempted to get out of bed; and that at 9 p.m. she gave him a prescribed dose of Mephergan 25 (a tranquilizing sedative routinely prescribed by Dr. Choy for the usual restlessness anticipated after an operation of the type suffered by Louie). The evening nurse related her experiences with the patient to the night nurse, and told her that the patient had to be watched.

The night nurse acknowledged that she discussed the plaintiff's condition with her predecessor. She testified that Mr. Louie was one of the sicker patients on her floor at that time; that at 12:45 a.m., in addition to noting that he seemed confused, she recorded that he was complaining of pain in the arms and moaning and picking at his clothes; and that she administered a prescribed dose of Mephergan 25 to relieve his pain. She stated that he continued to pick things out of the air when observed in the period preceding the accident. She opined that the only time he was in worse condition was a night prior to his operation, when he almost died.

None of the foregoing information was communicated to the physician prior to the accident. He last saw the patient at 6 p.m. on the 26th after two other visits that day. The doctor testified that he did not know what caused the reaction

reported as picking things out of the air, but that it was similar to the reaction of a person with delirium tremens, and that the drug, paraldehyde, which he prescribed at 3:30 a.m., after the accident, was used for situations where it was necessary to quiet a person down with something that works quickly.

The doctor testified that after the accident he considered the bedrails, which had been routinely used at all times after the operation, inadequate, and prescribed the paraldehyde to quiet Mr. Louie down. He stated that if he had known what was going on that evening he probably would have prescribed paraldehyde; that it would depend on the degree of confusion; that he would not have prescribed it merely on the basis of what appeared in the nurse's 12:45 a.m. notes; or if the patient's confusion was a sort of intermittent thing, but would prescribe it if advised of restlessness leading to an attempt to get out of bed. The paraldehyde was continued during the 27th and a private nurse was assigned to the case.

The foregoing evidence brings this case within the principles of *Valentin* v. *La Societe Francaise, supra,* 76 Cal.App.2d 1, wherein the court reversed a judgment for the defendant notwithstanding a verdict for the plaintiff, and ordered that judgment be entered on that verdict. The court stated: ''If a hospital is obliged to maintain its premises and its instrumentalities for the comfort of its patients with such care and diligence as will reasonably assure their safety, it should be equally bound to observe the progress of a patient in his recovery from a major operation with such care and diligence as his condition reasonably requires for his comfort and safety and promptly to employ such agencies as may reasonably appear necessary for the patient's safety. Whether a hospital has exercised such reasonable care under the circumstances of a case is for the determination of the jury. It follows that if the record shows substantial evidence of defendant's negligence and that such negligence was the proximate cause of decedent's death the judgment must be reversed.'' (76 Cal.App.2d at p. 5; see also *Thomas* v. *Seaside Memorial Hospital* (1947) 80 Cal.App.2d 841, 848-849 [183 P.2d 288]; and cf. *McDonald* v. *Foster Memorial Hospital* (1959) 170 Cal.App.2d 85, 95-97 [338 P.2d 607]; *Ericson* v. *Petersen* (1953) 116 Cal.App.2d 106, 109 [253 P.2d 99]; and *Gray* v. *Carter* (1950) 100 Cal.App.2d 642, 644 [224 P.2d 28].)

In *Valentin* the court observed: "In the light of the fore-going rules governing the proof of malpractice and the responsibilities of private hospitals the proof of defendant's negligence and that it was the proximate cause of the death of August Valentin is substantial. It is established by evidence of the inaction of the nurses in the presence of signals of danger which would have moved a reasonably intelligent attendant promptly to import a competent physician for the purpose of taking necessary precautions to prevent the development of the disease. For a supervisory nurse to permit a patient recovering from a major operation to suffer symptoms indicating a growing pathology for three days without medical care merely because the attending physicians were not available is a type of conduct that is negligence." (76 Cal. App.2d at p. 7.)

In *Thomas* it was established that it was the usual custom in hospitals to watch a child coming from under anesthetic until consciousness had returned. A judgment of nonsuit was reversed because the question of whether the hospital fulfilled its duty of care was a question for the jury on the facts presented.

In *McDonald* the court indicated that there was insufficient evidence to justify submitting to the jury the question of whether the alleged inaction of the nurses was negligent. The court distinguished *Valentin* and *Thomas* on their facts, relied upon *Gray* and *Ericson* and concluded: "Both cases stand for the proposition that a hospital may not be held liable in the absence of evidence which would support an inference that the hospital or its servants are chargeable with knowledge of any sudden change in a patient's mental condition sufficient to forewarn them that the patient was likely to fall from the bed. Appellant here did not contract for special nurses furnishing constant bedside attention, and a hospital is liable only for want of ordinary care. [Citation.]" (170 Cal.App.2d at p. 97.)[6]

In *Ericson,* after discussing the application of the doctrine of res ipsa loquitur (see, *infra*), the opinion concluded that "the question of plaintiff's mental capacity [at the time of the accident] was a question of fact for the trial court [which

---

[6]Further observations in *McDonald,* 170 Cal.App.2d at 102, and in the case of *Valentine* v. *Kaiser Foundation Hospitals* (1961) 194 Cal.App.2d 282, 287 [15 Cal.Rptr. 26], which conflict with the principle from *Siverson* v. *Weber* (1962) 57 Cal.2d 834, 839 [22 Cal.Rptr. 337, 372 P.2d 97], which is quoted in the text, *ante,* were, as noted, expressly disapproved by the Supreme Court.

found she was mentally normal and knew the significance of her own acts] to determine'' (116 Cal.App.2d at p. 111) ; and that there was ''sufficient evidence supporting the finding that neither defendant [sanitarium operator] nor her agents were negligent at the time of the claimed injury, even if it could be said that the doctrine of res ipsa loquitur was applicable to the facts presented'' (*id.* p. 111). The court refers to *Gray* as a precedent and noted that there was ''no evidence which would support an inference that defendants had any knowledge of any change in plaintiff's mental condition which would have caused them, as reasonable persons, to anticipate that she was likely to fall'' (*id.*).

*Gray* is the only one of these cases which finds the evidence insufficient as a matter of law to uphold a finding of negligence on the part of the hospital. The court stated: ''Aside from speculation and conjecture, we can find nothing in the record here which would justify a conclusion that the appellants should reasonably have anticipated that Mrs. Gray was likely to sustain such a fall.'' (100 Cal.App.2d at p. 644.) The case cited as requiring such anticipation, *Wood* v. *Samaritan Institution, Inc.* (1945) 26 Cal.2d 847 [161 P.2d 556], is one in which it was held error to grant a directed verdict because there was sufficient evidence to establish that the plaintiff ''was in a condition from which a reasonable person could conclude that she might do harm to herself unless restrained and that such condition was known to and recognized by defendant's attendants who were charged with the care of plaintiff.'' (26 Cal.2d at p. 852.)

It is concluded that the factual question of whether the patient's condition had changed to the extent that in the exercise of reasonable care the attending physician should have been notified was properly before the jury.

It was error to unqualifiedly give the instruction insofar as it suggests that negligence could be inferred because patients do not ordinarily fall from their beds. (See *Moore* v. *Belt, supra,* 34 Cal.2d 525, 529-531.) It was not error to permit the jurors to evaluate the general circumstances shown by the evidence, which includes the testimony of the doctor and nurses, in the light of the jurors' experience and reason.

Any error in the first part of the instruction was not prejudicial because the court charged the jury: ''You are further instructed that the mere fact that a particular accident does not ordinarily occur does not, in and of itself, prove that the accident was caused by someone's negligence.'' The

two instructions, considered together, required the jurors to confine their deliberation to the evidence, and precluded the speculation proscribed by *Siverson* (57 Cal.2d at p. 837, *supra*). Furthermore, when the jurors were reinstructed at their request, this instruction was omitted (see fn. 9, *infra*).

Defendant further objects to the instruction because it fails to rule out the possibility that the plaintiff's own acts contributed to his injury. (See *Ybarra* v. *Spangard, supra,* 25 Cal.2d 486, 489; and *Ericson* v. *Petersen, supra,* 116 Cal.App. 2d 106, 110.) This criteria is applicable in determining whether an inference of negligence should be entertained under the doctrine of res ipsa loquitur (see *infra*) where the cause of the injury is unexplained. The instruction in question here, however, can only be justified if it be deemed to apply to specific acts or omissions of the defendant as revealed by the evidence. Under such circumstances the negligence of the defendant may be offset by the contributing acts of the plaintiff, if negligent, but it is not thereby eradicated.

A consideration of the evidence and the instructions as given and requested impels the conclusion that the jury's deliberations were properly restricted to the actual circumstances in evidence. Those circumstances were such as to permit the jurors to resort to common experience and reason in determining the actual condition of plaintiff, and in determining whether or not the nurses reacted to that condition in a reasonable manner in the light of the evidence before them.

*Instructions on Res Ipsa Loquitur*

The plaintiff offered six specific instructions on the doctrine of res ipsa loquitur based upon BAJI (*supra*) No. 206, and No. 206-C, and upon cases which have interpreted the doctrine. The defendant contended that the doctrine was not applicable, but apparently suggested that if any instruction were given, it follow the form of BAJI No. 206-A, as revised. It proffered an instruction, allegedly based on No. 206 as revised and modified, concerning the effect of an explanation by the defendant. These instructions were rejected by the trial court.

The court on its own motion gave a conditional instruction on res ipsa loquitur. The conditions appear to be predicated upon the text of BAJI No. 214-W (New) as found in 1964 Pocket Parts (*supra*). That part of the instruction dealing with the inference itself and the evidence necessary to meet or balance it, follows the language of No. 206 (Revised) as found

in the same source.[7] These instructions were followed by a reiteration of the effect of an explanation, which was predicated upon a part of the instruction which had been offered by defendant, and by the instruction on the effect of the extraordinary nature of the accident which has been quoted above in connection with the discussion of the common knowledge instruction.

Defendant asserts that it was error to give any instruction on res ipsa loquitur because the evidence conclusively shows that the accident was occasioned by plaintiff's

[7] The instructions read: "I will give you some instructions on what Counsel has referred to as the *res ipsa loquitor* [*sic*].

"You are instructed that if, and only in the event you find by preponderance of the evidence

"(1) that the injury sustained by plaintiff while in the hospital was the kind of injury which ordinarily does not occur in the absence of someone's negligence;

"(2) that the injury was caused while plaintiff was exclusively under the care, treatment or control of the defendant. Plaintiff was not required to identify the particular thing or agency or instrumentality which caused the accident if you find that he does not or could not reasonably know the cause of his physical condition at or about the time of the accident;

"(3) that the injury or accident was not due to any voluntary action or contribution on the part of plaintiff.

"Then, if and only if you do find that the plaintiff's injury was of a kind which ordinarily does not occur in the absence of someone's negligence, and was caused while plaintiff was exclusively under the care or control of the defendant, and the injury was not due to any voluntary action or contribution by the plaintiff himself, you are instructed as follows:

"From the happening of the accident involved in this case, an inference arises that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and unless there is contrary evidence sufficient to meet or balance it, the jury should find in accordance with the inference.

"When there is any evidence to the contrary you must weigh all of the evidence bearing upon the issue of the defendant's negligence. If the evidence tending to prove that the accident or injury was caused by failure of the defendant to exercise the care required of him has greater weight than the evidence to the contrary, you will find in favor of the plaintiff on that issue.

"In order to meet or balance the inference of negligence the defendant must present evidence to show either

"(1) a satisfactory explanation of the accident, that is, a definite cause of the accident, in which there is no negligence on the part of the defendant, or

"(2) such care on the defendant's part as leads to the conclusion that the accident did not happen because of want of care by them but was due to some other cause, although the exact cause may be unknown. If such evidence has at least as much convincing force as the inference and other evidence, if any, supporting the inference, then you will find against the plaintiff on that issue and in favor of the defendant."

(Note that the adoption of the Evid. Code has occasioned further revisions in the recommended instructions referred to in the text. See BAJI, supra, 1967 Cumulative Pocket Parts.)

attempts to get out of bed by climbing over the bedrails to get a drink of water.

In *Ericson* v. *Peterson, supra,* the court was reviewing the findings of the lower court following a judgment for the defendant sanitarium operator. In response to the contention that the doctrine was applicable, and required a contrary result, the court stated: "From the evidence, viewed in a light most favorable to the defendant, as we must, it appears that the proximate cause of the injury was due to the action of Mrs. Ericson. The chief evidence of the true cause was accessible to the injured person. Therefore, the doctrine would not apply." (116 Cal.App.2d 106 at p. 110.) There the court found that the trial judge's finding that the plaintiff was mentally normal and knew the significance of her own acts precluded avoidance of the foregoing rule.

In the instant case the issue of the plaintiff's mental state and his knowledge of the significance of his own acts was properly left to the jury. The evidence of his restless, confused state, the testimony that he manifested symptoms similar to those attendant to delirium tremens, and the fact that he removed a gastric suction tube which went through his nose down to his stomach, and a urinary catheter all tend to support an inference that the patient's acts were irrational.

His alleged admissions do not require a contrary result. In the first place, the jury did not have to believe the testimony relating to these admissions. In the second place, it was possible that the version that the patient consciously climbed out of bed originated with the night nurse who recorded, "climbed over the siderails," and passed this information on to the day nurse who subsequently conversed with Mr. Louie in Chinese. Leading questions may have elicited affirmative responses.

The jurors were properly instructed to disregard the doctrine unless they found "that the injury or accident was not due to any voluntary action or contribution on the part of plaintiff." The delirious patient who can move is entitled to as much protection as the sleeping infant who is unable to clear her bronchial tubes.

Defendant also attacks that portion of the instructions which reads: "Plaintiff was not required to identify the particular thing or agency or instrumentality which caused the accident if you find that he does not or could not reasonably know the cause of his physical condition at or about the time of the accident; . . ." This qualification is designed to cover the situation where the plaintiff is uncon-

scious at the time the injury is received and is unable to identify the person or things responsible for it. (See *Ragusano* v. *Civic Center Hospital Foundation* (1962) 199 Cal. App.2d 586, 595-596 [19 Cal.Rptr. 118], and cases collected therein; and BAJI, *supra,* 1964 and 1967 Pocket Parts, No. 214-W.) As noted above, there is some evidence to show that plaintiff was not conscious at the time of the occurrence which led to the fracture of his hip. He was, therefore, entitled to this qualification.

It must be conceded, however, that the evidence requires the conclusion that if anybody other than plaintiff was negligent, it was the nurses, and that their negligence, if any, was in failing to advise the attending physician of the patient's worsening condition, or in failing to exercise more supervision.

"The introduction of evidence of specific acts of negligence does not deprive the plaintiff of the benefit of the doctrine unless the facts as to the cause of the accident and the care exercised by the defendant are shown as a matter of law thus eliminating any justification for resort to the inference of negligence. [Citations.]" (*DiMare* v. *Cresci* (1962) 58 Cal.2d 292. 299 [23 Cal.Rptr. 772, 373 P.2d 860]; accord: *Shahinian* v. *McCormick* (1963) 59 Cal.2d 554, 562 [30 Cal. Rptr. 521, 381 P.2d 377].)

Herein it cannot be said that either the facts as to the cause of the accident, or the care exercised was shown as a matter of law. Plaintiff was entitled to have the jury consider whether or not facts existed which entitled him to the inference. (*Shahinian* v. *McCormick, supra,* 59 Cal.2d 554, 561-562.)

Finally, defendant attacks the instruction because the last portion required the defendant hospital to "present evidence to show . . . such care on the *defendant's* part as leads to the conclusion that the accident did not happen because of want of care by *them,* but was due to some other cause, although the exact cause may be unknown." (See fn. 7, italics added.) It asserts that the reference to "defendant's" reads the same as the plural "defendants' " and that the jury would construe "them" as referring to both the hospital and the doctor, thereby requiring the hospital to show not only that the accident did not occur because of want of care on its part, but also that it did not occur because of want of care on the part of the doctor.

This argument is not warranted by the record. Before the case was argued the court advised the jury, "Before you start

to argue, Dr. Choy is no longer a party in this case, and as to the reasons for that is of no concern to you. You are not to infer one way or the other that the Chinese Hospital is responsible; that is a matter you have to determine after you hear the argument and you hear the instructions given by the Court.'' No instructions were given concerning the duty of care of the physician, and it is incomprehensible that the jurors would have considered the existence or nonexistence of due care on the part of the doctor in the framework in which the case was submitted to them.

 Even if the objections to the instructions on res ipsa loquitur were well taken, there is a lack of prejudice in this case. The issues as to the condition of the patient and the duty of care of the nurses were well drawn, and it is inconceivable that the jurors would speculate about some fanciful want of care on the part of the hospital or its employees. This conclusion is exemplified by the question posed by the jury, and the submission of the case to them at their request on the simple issues of negligence and contributory negligence.

## Prejudice

In *Bridgman* v. *Safeway Stores, Inc.* (1960) 53 Cal.2d 443 [348 P.2d 696], the court observed as follows: ''We are of the view, however, that the judgment should be affirmed. Section 4½ of article VI of the Constitution provides, 'No judgment shall be set aside . . . on the ground of misdirection of the jury . . . unless, *after an examination of the entire cause, including the evidence,* the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Italics added.) No precise formula can be drawn for deciding whether an error in instructions has resulted in a miscarriage of justice. For this purpose the appellate court must review the entire record, including the evidence, and in each instance the determination whether the error requires a reversal depends upon all the circumstances of the particular case. [Citations.]'' (53 Cal.2d at p. 450.)

 The core of defendant's argument is that the inferential instruction on due care permeated the case and prevented consideration of the issue of whether the patient was contributorily negligent in causing the accident by his own voluntary acts.

Plaintiff offered no direct instruction on ''due care.'' The argument of counsel is not part of the record. It should not be inferred that the plaintiff who offered no instruction on this erroneous theory relied upon it in argument. Moreover, since

the defendant was so vigilant as to have proposed the cautionary instruction, it may be inferred that it would have been equally vigilant in resisting any attempt by plaintiff to capitalize on his present loss of memory in argument.

In fact the record in this case reflects that the jury, prior to the last 37 minutes of an afternoon of deliberation, had not followed any mandate which would eliminate the issue of contributory negligence from the case. At that time it addressed the following request to the court: ''Please read instructions regarding contributory negligence and negligence and Judge's instructions regarding hospital rules.''

The court, thereupon, repeated the general instructions it had given on negligence; the general instructions on contributory negligence;[8] the specific instructions on the duties of a hospital; the instructions on the duties of a graduate nurse;[9] and excerpts from the California Administrative Code on the subjects of orders for medication and treatment, and restraints, which originally had been requested by defendant.

---

[8]These instructions read as follows: ''You are instructed that if the negligence of the injured party, the plaintiff in this case, contributed proximately to the injuries complained of, the law will afford him no recovery.

''In order to avoid injury to himself, plaintiff was bound to have exercised reasonable care to avoid the same; that is, he was bound to use such care and diligence as a reasonable and prudent person should have exercised under like circumstances.

''I will now define for you contributory negligence. Contributory negligence is such an act or omission on the part of the injured party, amounting to a want of ordinary care, which concurring and cooperating in some degree with a negligent act of another, helps in proximately causing the injury which the former thereafter complained of. Contributory negligence is not based upon the possibility of avoiding an accident or because one might have avoided the accident had he acted differently.

''Contributory negligence is a matter of defense to be proven affirmatively by the defendant by a preponderance of the evidence. It was not encumbent upon the plaintiff to prove that he was free from contributory negligence.

''An injury may be sustained either through the negligence of a plaintiff or a defendant, or through the negligence of both. If you find that the defendant was negligent and that plaintiff was also negligent and that plaintiff's negligence contributed proximately to his injury, plaintiff cannot recover on his cause of action for negligence. Such negligence on the part of the plaintiff, if you should find it to exist, is called contributory negligence. The reason for this rule of law is not the fault of one justifies the fault of another, but simply because there cannot be apportionment of blame and damages among the participating agents of causation.''

[9]Among these was one which was originally read: ''In deciding this question [whether a nurse failed to fulfil any of her duties] you must *not* consider what a medical doctor or resident physician would have done had he possessed knowledge of the circumstances surrounding the accident and the condition of the patient.'' (Italics added.) According to the

No reference was made to either of the instructions which referred to presumptions. The jury expressed its satisfaction with the instructions which had been reread and returned to its deliberations. Under these circumstances it is conceivable but not probable that the jury would have returned a different verdict if the questioned language had not been added to defendant's instruction.

Consideration has been given to the observations of the jury in determining both the absence (*Borenkraut* v. *Whitten* (1961) 56 Cal.2d 538, 543-544 [15 Cal.Rptr. 635, 364 P.2d 467]) or existence (*Huntingdon* v. *Crowley* (1966) 64 Cal.2d 647, 660-661 [51 Cal.Rptr. 254, 414 P.2d 382]) of prejudice from the giving of erroneous instructions. (Cf. *Ragusano* v. *Civic Center Hospital Foundation, supra,* 199 Cal.App.2d 586, 597-599.)

In respect of all the instructions the thrust of defendant's argument is that the testimony of the doctors and nurses established as a matter of law that the hospital exercised due care, and that the plaintiff contributed to his own injuries. The evidence reflects that there were issues as to whether plaintiff's acts were truly volitional, and whether the hospital's employees exercised due care under all of the circumstances. Realistically it would appear that these issues were resolved by the jury on the reread instructions on simple negligence and contributory negligence. The instructions under attack herein, apparently were not considered decisive by the jurors.

An examination of the entire case, including the evidence, leads to the conclusion that it is not reasonably probable that a result more favorable to defendant would have been reached had the instructions under attack not been given. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 25, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1967. Traynor, C. J., and Burke, J., were of the opinion that the petition should be granted.

---

transcript the ''not'' was deleted in the rereading. No issue has been raised in regard to this omission. More significantly the court eliminated the instruction on common knowledge, discussed *infra,* which had originally been given after the foregoing instruction and before an instruction, which was repeated, reading, ''A nurse is required to exercise only the ordinary care which a person of her particular training would be required to use.''