Walter PALMER and Odie F. PALMER
*v.* INTERMED, INC.

CA 80-170                                        606 S.W. 2d 87
Court of Appeals of Arkansas
Opinion delivered October 1, 1980

*Trantham & Lingle*, by: *John R. Lingle*, for appellants.

*Cathey, Goodwin, Hamilton & Moore*, by: *Ray A. Goodwin*, for appellee.

DAVID NEWBERN, Judge. The trial court directed a verdict in favor of the defendant at the end of the appellant's presentation of evidence. The appellants ask that the directed verdict be reversed because either there was sufficient direct evidence of negligence, or *res ipsa loquitur* applied and the appellee should have been required to go forward with evidence it was not negligent. We hold that the appellants' evidence was insufficient to establish their case or make *res ipsa loquitur* applicable, and thus we affirm.

The appellants presented a number of witnesses who were friends of their family who had visited the appellant, Odie Palmer, in a nursing home operated by the appellee. All of them seemed to be aware that an accident had occurred while Mrs. Palmer was a patient in the nursing home, but none of them presented any testimony as to how the accident occurred. The testimony of an orthopedic surgeon was sufficient to establish that sometime around February 23, 1975, Mrs. Palmer sustained a broken hip. Mrs. Palmer's family doctor also testified, but neither physician gave any evidence

as to the manner in which the break was sustained. Mr. Palmer testified that on February 23, 1975, Mrs. Palmer was a patient as the Golden Years Nursing Home operated by the appellee. He attempted to testify as to what some unknown persons to whom he referred as "they" had told him about how the break occurred. Objection to that testimony was properly sustained, and that is not an issue on this appeal. Mr. Palmer obviously had no personal knowledge as to how Mrs. Palmer's injuries occurred.

The various other witnesses who testified were asked whether the bed upon which they had observed Mrs. Palmer at the nursing home was equipped with side rails. Most of them could say only that on the dates they visited rails were not raised. One witness, Ruth Short, was specific in her recollection that the bed was not equipped with side rails, but her visit to Mrs. Palmer occurred two or three weeks before the injury occurred. Mr. Palmer testified that he had visited Mrs. Palmer 2 or 3 days before she was injured. He said "I don't think" there were rails on the bed, at least, he said, they "certainly wasn't up."

The court took judicial notice of a regulation of the Arkansas State Board of Health which states: "Double bed rails shall be provided for bed patients and disoriented patients." Although the abstract provided by the appellant does not make it clear, we assume for purposes of this appeal the regulation was in effect on the date in question and was applicable to the appellee's nursing home.

At the close of the appellant's evidence, the appellee moved for a directed verdict. After considerable discussion between counsel and the court, the court said it could not permit the jury to speculate or resort to conjecture, and the motion was granted.

### 1. Direct evidence of negligence

The appellants contend there was sufficient evidence of negligence to go to the jury because of testimony showing violation of a nursing home regulation. The difficulty with that argument is that there is no showing that the violation

existed on the date the injury occurred or that there was any connection between the two. As the appellee points out, we have absolutely no evidence in this record whether the injury occurred in the room occupied by Mrs. Palmer, in a bathroom, or hallway, or even in the building occupied by the nursing home. Negligence without a showing that it caused the injury complained of is not actionable.

## 2. *Res ipsa loquitur.*

The appellants contend their case was sufficiently established because the doctrine of *res ipsa loquitur* applies. They cite no cases in conjunction with this argument, but refer only to a legal encyclopedia provision to the effect that a plaintiff who seeks to apply the doctrine is not required to produce evidence excluding all possible causes other than the defendant's negligence. While that statement may or may not be correct, a plaintiff seeking to take advantage of the doctrine must do more than show the injury could have occurred as a result of the defendant's negligence. In *Dollins* v. *Hartford Accident & Indemnity Company*, 252 Ark. 13, 477 S.W. 2d 179 (1972), our supreme court dealt with with doctrine in a case similar to this one. An injury had occurred to a patient in a hospital. There was evidence the patient was found at the foot of her hospital bed in her injured condition. There was also evidence that she was attempting to get from her bed to a bathroom, and that the side railings on her bed were raised to prevent her from falling. The appellant, who was the husband of the victim in that case, argued that the patient, the safety restraints and the nurse on duty were all instrumentalities under the control of the hospital, and thus the doctrine of *res ipsa loquitur* applied. The supreme court affirmed the granting of a directed verdict for the defendant saying the doctrine did not apply. In its opinion, the court discussed Prosser, *Law of Torts*, § 39 (4th ed., 1971), in which it is made clear that:

> Before *res ipsa loquitur* can be applied, there must first be an inference that someone must have been negligent and then the burden of proof is upon the plaintiff to show that the negligence was that of the defendant and to trace the injury to a cause of specific instrumentality for

which the defendant was responsible or show that he was responsible for all reasonable probable causes. [252 Ark. at 17.]

The appellant's argument in *Dollins* was, as it is here, that the patient was so much under the control of the hospital that she became the "instrumentality" used by the hospital to cause injury. The supreme court declined to accept that argument because it found the victim had been able when she was discovered in her injured condition to explain why she had left her bed. Unlike the victim there, testimony here showed Mrs. Palmer was at the time of her injury and remains unable to speak as a result of the stroke which originally disabled her. Thus, there is a distinction between the cases. We do not, however, find that distinction to be controlling because the appellants have presented no evidence whatever as to the manner in which the injury occurred, and no evidence of the degree of contractual or actual control exercised by the appellee. As the supreme court pointed out in the *Dollins* case, the application of *res ipsa loquitur* should be limited to situations in which the defendant has available to it evidence of the true cause of the injury and that evidence is not available to the plaintiff. The defendant here offered to put the nursing home administrator on the witness stand for examination by the plaintiff's counsel at the time the motion for directed verdict was made. The offer was declined.

Absent some showing that the injury was caused by an instrumentality under the appellee's control or that it would not have occurred if those having control of the instrumentality had used proper care, we cannot apply the *res ipsa loquitur* doctrine.

There is a small, but growing body of law, which was ignored by the parties in this case, dealing with application of *res ipsa loquitur* to hospitals and nursing homes. The doctrine has been applied when "unexplainable" injuries occur in hospitals. *McDonald* v. *Foster Memorial Hospital*, 170 Cal. App. 2d 85, 338 P. 2d 607 (1959); *Maki* v. *Murray Hospital*, 91 Mont. 251 7 P. 2d 228 (1932). *Cf., Martin* v. *Aetna Cas. & Surety Co.*, 239 Ark. 95, 387 S.W. 2d 334 (1965); and *Gallachicco* v. *State*, 43 N.Y.S. 2d 439 (Ct. Cl. 1943), in which hospital

instrumentalities (wheelchair in *Martin* and elevator in *Gallachicco*) caused injury. See also, *Durfee* v. *Dorr*, 123 Ark. 542, 186 S.W. 62 (1916), which applied the doctrine on the basis of evidence tending to show injury could not have resulted other than from the hospital's negligence. See also, *Annot.*, 9 A.L.R. 3d 1315 (1966 and Supp. 1980).

The doctrine has not, however, been applied to nursing homes. See, *e.g., Ericson* v. *Petersen*, 116 Cal. App. 2d 106, 253 P. 2d 99 (1953) (cause said to have been known by victim); *Ivy Manor Nursing Home, Inc.* v. *Brown*, 488 P. 2d 246 (Colo. App. 1971) (no evidence showing cause must have been defendant's negligence); *Tait* v. *Western World Ins. Co.*, 220 So. 2d 226 (La. App. 1969), *cert. den.*, 254 La. 137, 222 So. 2d 884 (1969) (mere fact of fall does not infer negligence); *Brown* v. *University Nursing Home, Inc.*, 496 S.W. 2d 503 (Tenn. App. 1972) (fall may occur absent anyone's negligence, and doctrine not applicable where specific negligence also alleged). See also, *Annot.*, 83 A.L.R. 3d 871 (1978). The distinction between the duty of care required of hospitals and that of nursing homes, generally, has been explained in at least one case as arising from the degree of control exercised by hospitals over physicians and hospital facilities and employees, assuming the same degree of control is not exercised by nursing homes. *Stogsdill* v. *Manor Convalescent Home, Inc.*, 35 Ill. App. 3d 634, 343 N.E. 2d 589 (1976). While we question that assumption, this is not a case in which we should examine it, given the dearth of evidence of the nursing home operation or the incident in question here.

Affirmed.